THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF HUDSON and THE BOULEVARD COMMISSIONERS OF THE COUNTY OF HUDSON

v.

CENTRAL RAILROAD COMPANY OF NEW JERSEY et al.

[Filed December 2d, 1904.]

1. Jurisdiction of the subject-matter of a suit in equity cannot be conferred by consent.

2. Though the physical construction of a grade crossing over a street cannot be enjoined as a nuisance, if it be authorized by law, yet, if the railroad company exhibits an intention not to comply with the law with respect to safeguarding the same, municipal authorities are entitled to apply to a court of equity for relief touching the same.

3. The Hudson county boulevard, constructed by boulevard commissioners, is "a street in a city" within the terms of section 26 (*P. L. 1903, p. 659*), and hence a railroad is entitled to cross the same at grade on obtaining the consent of the city council, without the consent either of the boulevard commission or of the board of chosen freeholders.

---

The bill in this case is filed by the board of chosen freeholders of the county of Hudson and by the boulevard commissioners of the county of Hudson against the Central Railroad Company of New Jersey and the Goubert Manufacturing Company. The city of Bayonne was subsequently, by amendment to the bill, made a party defendant.

The object of the bill is to obtain an injunction against the Central Railroad Company restraining it from entering upon the Hudson boulevard at a point where the same is intersected by West Second street, in the city of Bayonne, and tearing up the surface of the said boulevard and laying railroad tracks thereon.

The bill charges that, under an act entitled "An act to authorize the board of chosen freeholders of any of the several counties of this state to lay out, open, construct, improve and maintain a public road therein," approved April 7th, 1888, and its several

supplements and amendments, the board of freeholders of Hudson county laid out a public road in that county, beginning at the dividing line between the counties of Hudson and Bergen, and running in a general southerly direction through the county of Hudson, terminating at or near the shores of the Kill von Kull in the city of Bayonne, and that the road has ever since been maintained for the purposes mentioned in the act, and is known as the "Hudson boulevard."

That said road, with its extensions as now constructed, is about twenty miles long, and throughout its length is generally one hundred feet wide. That its cost approximated $3,000,000, and that it is substantially the only pleasure drive in the county of Hudson.

The bill further shows that after the passage of a supplement to the act first mentioned, which supplement was approved March 24th, 1898, a general election was held in the county of Hudson in November, 1898, at which boulevard commissioners were elected under said supplement, and that the complainants hold the said office of boulevard commissioners, and that since the election of boulevard commissioners the said Hudson boulevard has been continuously under the management and control of such commissioners.

That the boulevard in the city of Bayonne is one hundred feet in width, and is graded, curbed, guttered and provided with sidewalks; and that the roadway between the curbs is paved with telford macadam pavement, which pavement extends continuously throughout the entire length of the said boulevard, across all of the intersecting streets, excepting where the tracks of certain street railway companies cross the boulevard.

The bill further shows that no steam or dummy railroad at the present time crosses the said boulevard at grade, and that all steam railroad crossings are either above or beneath the grade of the said boulevard.

It sets out that all of the expense of construction, maintenance and repair of said boulevard was and is paid by the county at large.

The bill further sets out that on the 5th day of May, 1904, petitions were presented to the boulevard commissioners by John

J. Kane and by Thomas Brady and others requesting permission to lay a railroad across the Hudson boulevard at West Second street, in the city of Bayonne, and that on the 11th of May, 1904, the boulevard commissioners unanimously refused said applications, and that no other applications were made to the complainants, and that no consent has been given by the complainants to the Central Railroad Company of New Jersey, or to anyone else, to cross said boulevard at grade within the limits of the city of Bayonne.

The bill further shows that on the 5th of January, 1904, the Goubert Manufacturing Company petitioned the mayor and council of the city of Bayonne for consent to the construction of a branch railroad which, along the route indicated, would cross the Hudson boulevard at West Second street, in the city of Bayonne; and that the said mayor and council of the city of Bayonne granted the permission prayed for in the petition; and that the Central Railroad Company filed its acceptance of the ordinance so granting said permission, and that it is the intention of the Central Railroad Company to construct tracks at grade, under the provisions of said ordinance, upon which to operate a steam railroad across the Hudson boulevard at West Second street, in the city of Bayonne.

It is alleged in the bill that the construction, operation and maintenance of a steam railroad crossing at grade at the point in question would work a permanent injury to the complainants; that it would be irreparable, and would constitute a permanent and continuing nuisance.

As before stated, the bill prayed an injunction to restrain the construction of the said grade crossing.

To this bill the Central Railroad Company filed an answer setting up its incorporation under the laws of New Jersey; that it was operating a railroad, and that by virtue of the consent granted by the municipal authorities of Bayonne it claims to have full power and authority to build a branch line across the Hudson boulevard at grade at the point where the boulevard is intersected by West Second street, in the city of Bayonne, and that such branch line, when built, will become a part of the rail-

way system of the said Central railroad, and will be used by it as a steam railroad.

It denies that the complainants, or either of them, have any power or jurisdiction in the premises, and that any consent or permission is required by law from the complainants, or either of them, for the construction, operation and maintenance of a grade crossing by the railroad company at the point in question, and that it has the lawful right to construct such grade crossing by complying with the provisions of the ordinance of the city of Bayonne.

The answer sets up the willingness of the railway company to submit itself to any reasonable regulations which may be lawfully imposed by the complainants, or either of them, concerning the character of the pavement to be laid between the rails, and the manner of laying the same,. and the manner of laying the rails, and of restoring the surface of the boulevard; and further submits itself to the jurisdiction of this court to fix and determine the rights of the parties concerning the construction of the said railway across the boulevard at the point in question.

It sets up that neither an overhead nor an undergrade crossing is feasible at the point in question for reasons set forth in the answer.

It denies that the construction and operation of the railroad at grade at the point in question will be a permanent injury, or any injury, or that it will constitute a nuisance.

The Goubert Manufacturing Company, and subsequently the city of Bayonne, also made answer to the said bill, but the allegations of these answers need not be rehearsed.

An order to show cause was granted upon the filing of the bill and affidavits by the complainants, and upon the coming in of that order (the then defendants in the meantime having filed their answers) an order was made, which was consented to by each of the then parties to this cause. That order reads as follows:

"The order to show cause, granted on the fifteenth day of July, nineteen hundred and four, in the above-entitled cause, why the defendants should not be enjoined pursuant to the prayer of the bill, now coming on

to be heard in the presence of John Griffin, of counsel for the complainants, and George Holmes, of counsel for the defendant Central Railroad Company of New Jersey, and James Benny, of counsel for the defendant Goubert Manufacturing Company; and the defendants having by their answer requested this court to retain jurisdiction over this cause, and define the mode and manner of crossing the Hudson boulevard by the proposed branch line of the defendant Central Railroad Company of New Jersey, mentioned in the bill of complaint herein, and the complainants assenting that this court retain jurisdiction of this cause for all purposes,

"It is, on this second day of August, nineteen hundred and four, ordered that it be and hereby is referred to Frank P. McDermott, Esq., one of the special masters of this court, to take the evidence of the respective parties respecting the mode and manner in which this court should define the crossing of the said Hudson boulevard by the said branch line of railroad of said defendant Central Railroad Company of New Jersey, including the questions as to whether said crossing shall be at, over or under grade, and in any case what regulations and restrictions and conditions should be made by this court in the construction, maintenance and use of the aforesaid crossing, and return same to this court.

"And it is further ordered that all equities be reserved until the coming in of said master's report.

"And it is further ordered that, until the further order of this court, the said defendants, their officers, servants, agents and employes, do absolutely desist and refrain from entering into and upon and breaking or tearing up the surface of the Hudson boulevard and laying tracks thereon at a point where West Second street, in the city of Bayonne, intersects the same, or at any other on said boulevard.

"Respectfully advised.
                              "LINDLEY M. GARRISON,
                                        "*V. C.*

"The above order is hereby assented to.

                              "JOHN   GRIFFIN,
                                "*Sol'r for Complainants.*
                              "GEO. HOLMES,
                    "*Solicitor and of Counsel for Deft.*
                      *Central Railroad Company of N. J.*
                              "JAMES BENNY,
                        "*Solicitor of Deft. The Goubert*
                              *Manufacturing Co.*

"August 2d, 1904."

Subsequently the city of Bayonne filed its answer and consented to the making of the order of August 2d, 1904.

An order of reference having been made, the case came on for hearing upon the bill and answers, the order of August 2d, above recited, and the testimony taken by the parties under the last-mentioned order.

*Mr. John Griffin,* for the complainants.

*Mr. George Holmes,* for the defendant the Central Railroad Company of New Jersey.

*Mr. James Benny,* for the defendants the Goubert Manufacturing Company and the city of Bayonne.

GARRISON, V. C.

The first question for determination is whether this court has any jurisdiction in this suit.

The consent of all the parties to the making of the order of August 2d, 1904, by the terms of which it is provided that this court shall retain jurisdiction of this cause, will, of course, not be effectual if the court is without jurisdiction of the subject-matter.

It is too well settled to require citation that jurisdiction over the subject-matter of a litigation cannot be created or conferred by consent, and that unless the court has jurisdiction of the subject-matter it may not be permitted to exercise the same, even though all the parties consent that it do so.

The bill was filed upon the theory that the construction of the railroad across the boulevard at grade would constitute a nuisance. There is a further insistment made that before the railroad company is authorized to cross the boulevard at grade it must first obtain the consent of the boulevard commissioners, or of the board of chosen freeholders, to such crossing.

It may be remarked, in passing, that the joining of the two municipal bodies as complainants was evidently a precaution taken by counsel so as to avoid any question of lack of power in either acting separately, and since no objection was raised by the defendants to such joinder of complainants, there is no reason why the rights of the parties should not be determined without necessarily defining whether the right obtains to the freeholders or to the boulevard commission. In stating my conclusions, whenever I refer to the complainants, I shall mean whichever body is vested with the powers or rights or limitations with respect to the boulevard.

The Hudson county boulevard is a road built under the provisions of an act of the legislature, the date and title of which have been heretofore given (*3 Gen. Stat. p. 2882*), under the terms of which the complainants have the exclusive control of the road and may regulate the use thereof throughout its entire length.

They have the power to establish the width of the carriageways and sidewalks; they may build sewers, culverts and receiving basins, and have power to improve and repair the road and light the same, and, under certain subsequent amendments and supplements, have what may be construed to be a joint easement with the municipalities through which the road runs in the matter of sewer, water and gas pipes running through or under the boulevard.

The entire expense of construction, maintenance and repair is borne by the county treasury.

Section 12 of the act provides "That, except to cross such road, no horse, dummy or other railroad shall be allowed on such road or any part thereof."

The act under which the road was constructed has been stated by the supreme court to be *sui generis*. *Curley* v. *Freeholders of Hudson, 66 N. J. Law (37 Vr.) 401 (Supreme Court, 1901)*.

And that court has also determined that under the act "the board has exclusive control of such road." *Hudson* v. *Bayonne, 54 N. J. Law (25 Vr.) 293 (Supreme Court, 1892)*.

By the ninth section of the revision of the Railroad law (*P. L. 1903 p. 650*), a railroad may construct a branch line of a certain character by following the provisions of that act, provided it shall obtain the consent of the municipal authorities thereto.

It is admitted by the bill that the consent of the municipal authorities of Bayonne has been obtained to the construction of the branch line by the Central Railroad Company in this suit, in laying which the crossing of the boulevard at West Second street would ensue.

There can be no doubt that the complainants, as the trustees of the public easement of passage over the boulevard, are proper parties to file a bill to preserve and protect the road in their control from unlawful interference. *Freeholders of Monmouth*

v. *Red Bank and Holmdel Turnpike Co., 18 N. J. Eq. (3 C. E. Gr.) 91 (Chancellor Zabriskie, 1866)* ; *Township of Greenwich v. Easton and Amboy Railroad Co., 24 N. J. Eq. (9 C. E. Gr.) 217 (Chancellor Runyon, 1873)* ; *Jersey City v. Central Railroad Co. of New Jersey, 40 N. J. Eq. (13 Stew.) 417 (Vice-Chancellor Van Fleet, 1885)* ; *Newark v. Delaware, Lackawanna and Western Railroad Co., 42 N. J. Eq. (15 Stew.) 196 (Vice-Chancellor Van Fleet, 1886)* ; *Township of Hamilton v. Wainwright, 52 N. J. Eq. (7 Dick.) 419 (Vice-Chancellor Bird, 1894)* ; *Township of Franklin v. Nutley Water Co., 53 N. J. Eq. (8 Dick.) 601 (Vice-Chancellor Emery, 1895)* ; *Burlington v. Pennsylvania Railroad Co., 56 N. J. Eq. (11 Dick.) 259 (Vice-Chancellor Reed)* ; *Coast Company v. Spring Lake, 56 N. J. Eq. (11 Dick.) 615 (Vice-Chancellor Reed, 1898)* ; *Palmyra v. Pennsylvania Railroad Co., 62 N. J. Eq. (17 Dick.) 616 (Vice-Chancellor Grey).*

Their contention in their bill is that the construction as contemplated under the ordinance of Bayonne, providing as it does for a different character of pavement, and not providing for any derailing switches, gates or other safeguards, would constitute a nuisance, and that they have the right to apply to the court of chancery to restrain the defendants from constructing their railroad in such a way as to constitute a nuisance.

It is settled that whatever is done under the authority of law is not a nuisance.

Chancellor Green, in *Hinchman v. Paterson Horse Railroad Co., 17 N. J. Eq. (2 C. E. Gr.) 75 (1864)* (at *p.* 77), said:

"A public nuisance must be occasioned by acts done in violation of law. A work which is authorized by law cannot be a nuisance."

And the supreme court, in the case of *Montgomery v. Trenton, 36 N. J. Law (7 Vr.) 79 (1872)* (at *p. 81*), says:

"The prosecutors claim that the railway, if constructed, will be a nuisance. But no structure which has the sanction of lawful authority can be a nuisance. That result could flow only from doing an act unauthorized and illegal."

So that it is settled that if the railroad company was authorized by law to cross the boulevard at grade, the construction of

its railroad at that point could not be enjoined as a public nuisance.

The twenty-sixth section of the revised Railroad law (*P. L. 1903, p. 659*) prescribes the duty of railroad companies with respect to highways crossed by such companies.

Similar provisions will be found in the charters of almost all, if not all, of the railroads chartered by special act. *Palmyra* v. *Pennsylvania Railroad Co., 62 N. J. Eq. (17 Dick.) 601 (Vice-Chancellor Grey, 1901).*

And there seems to be no doubt that the legislature has the power to provide, as enacted in this section, in the public interest, and the railroads previously chartered would be subject to such provisions. *Palmyra* v. *Pennsylvania Railroad Co., supra; Montclair* v. *New York and Greenwood Lake Railway Co., 45 N. J. Eq. (18 Stew.) 436 (Chancellor McGill, 1889).*

Since the answer of the railroad company expresses its willingness to abide by any reasonable rules and regulations with respect to the placing of the rails on the surface of the boulevard and the paving between the rails, and with respect to restoring the surface of the road, no injunction, under the circumstances, should issue upon the theory that any nuisance will be committed by the method or manner of laying the rails or interfering with the present surface of the road.

Whether the court of chancery would take jurisdiction of a bill to restrain a railroad from crossing a highway because of an allegation that it was not about to perform the duty enjoined upon it by the twenty-sixth section of the revised Railroad law, or of some similar provision contained in its charter (if it were not subject to the cited section of the Railroad law), is left to be settled under the contention of the complainants now being dealt with.

The physical construction of the road in the street, being authorized by law, is not a nuisance; but if the railroad company exhibits an intention to construct a grade crossing and not to comply with the provisions of the law with respect to safeguarding the same, it would seem that the municipal authorities in whom were vested the custody of the public easement would have the right to apply to the court of chancery to restrain such

construction. As was said by Vice-Chancellor Grey, in the case of *Palmyra* v. *Pennsylvania Railroad Co., supra,* (at *p. 617*): "Municipal authorities, being charged with the duty of keeping highways fit for safe and convenient passage, this court has always maintained their right to its aid to restrain wrongful acts by railroad companies at crossings. *City of Newark* v. *Delaware, Lackawanna and Western Railroad Co., 42 N. J. Eq. (15 Stew.) 196.* \* \* \* The same principle was unanimously declared by the court of errors and appeals in *Township of Greenwich* v. *Easton and Amboy Railroad Co., 25 N. J. Eq. (10 C. E. Gr.) 565."*

Although there are no distinct charges in the bill setting forth the particulars of the manner of crossing contemplated by the railroad company, it is set forth that the railroad company claims the right to cross if it complies with the terms of the ordinance of the city of Bayonne, which is referred to in the bill and attached as an exhibit to it.

From an inspection of that ordinance it will appear that the only provision concerning the matter of safeguarding the crossing is contained in subdivision C of section 2, which reads as follows:

"This consent is granted upon the further condition that said Central Railroad Company of New Jersey \* \* \* shall construct and maintain, at the several points where the said branch line intersects (the streets), first-class standard railroad crossings which will enable teams and pedestrians to cross said branch line at the said intersecting streets with the same facility and freedom from inconvenience as is afforded where public highways now cross said Avenue A branch line."

There is nothing before the court from which it can be learned what the conditions are where "the public highways now cross said Avenue A branch line."

It might be, therefore, that the complainants failed to include such charges in their bill as would make out a case calling for the intervention of this court, or that the defendants, by their answer, showed a set of facts in which the intervention of this court would have been improper; but it is not necessary in this case to decide that question, because, both by the answer of the railroad company and by its stipulation, it consents

that this court shall retain jurisdiction for the purpose of defining the mode and manner of crossing the Hudson boulevard by the proposed line of railway, and this is sufficiently broad to cause the court to retain jurisdiction, permitting the parties complainant to amend their bill in such respects as may be necessary to raise the issues which are actually tried and determined herein.

I am of opinion, therefore, that for the reasons just suggested, and upon the ground stated, this court has jurisdiction, unless the state of the law is such that the consent of the complainants is a prerequisite to the right of the railroad company to cross the boulevard at grade.

If such consent is necessary, then this court has no jurisdiction to define the manner of crossing, since it cannot substitute its consent for the consent which the legislature required to be obtained from the complainants; and no stipulation or agreement by the complainants to shift or delegate the right to grant this consent from its own discretion to the discretion of the court could be effectual to accomplish such a purpose.

Whether the consent of the complainants is required by the railroad company to cross the boulevard at grade depends upon the construction to be placed upon the twenty-seventh section of the revised Railroad law. *P. L. 1903 p. 659.* That section reads as follows:

"Where any railroad shall cross any street or highway in any city, it shall be either above or below the grade thereof, at such distance as shall not interfere with the free and uninterrupted use of such street or highway, unless the common council or other governing body of the city in charge of streets shall grant permission to the railroad company to cross such street or highway at grade."

I am of opinion that the boulevard must be held to be a street in a city, within the meaning of this act. It is certainly within the corporate limits of the city, and the word "in," as defined in *16 Am. & Eng. Encycl. L. (2d ed.) 123,* is "in" means "inside of;" "within the bounds or limits of, as 'in the house, in the city, in the county.'" And in the case of *Pancoast* v. *Troth, 34 N. J. Law (5 Vr.) 377 (Supreme Court,*

*1871*), construing language referring to roads "in the township," the court held that a road was *in the township of Bordentown,* notwithstanding that it was wholly within the city of Bordentown, there being in that case a curious duality of township and city government.

If this be the correct construction of the language of this act, then such street in the city may be crossed at grade if permission is obtained from "the common council or other governing body of the city in charge of streets."

That permission has been obtained in this suit.

It is argued on behalf of the complainants that since the law vests in them the exclusive control of the boulevard, it should not be held to be the intention of the legislature to permit the boulevard to be crossed at grade upon a consent obtained from the authorities of the city.

There is no provision in the Boulevard act, or in any other act which has been called to my attention, which vests in the complainants any power or authority to grant consents to railroad crossings, and it is well settled that unless the legislature has vested such authority in the municipal body having charge of the street it has not such power. *Domestic Telephone Co.* v. *Newark, 49 N. J. Law (20 Vr.) 344 (Supreme Court, 1887)*; *Benton* v. *Elizabeth, 61 N. J. Law (32 Vr.) 415, 417 (Supreme Court, 1898)*. So that if it be held that the consent of the city authorities is not effectual to empower the railroad to cross the boulevard at grade in the city, then that road may not be crossed at grade in the city, because there is not any provision vesting authority to permit such crossing lodged in the complainants.

The law is perfectly settled in this state that a railroad chartered to construct a line between ascertained termini may, by implication, cross at grade all streets and highways lying between such termini.

The twenty-seventh section of the General Railroad act is, in my opinion, declaratory of a legislative purpose to safeguard the public in cities by providing for other than grade crossings except in such cases as shall seem to the city authorities as safe cases in which to permit grade crossings.

It would, in my view, be perfectly lawful for the legislature

to provide that there should be no grade crossings in cities excepting in such cases as should be permitted by the police commission or any other municipal authority designated as the body from whom consent should be obtained, and I think that the language used in the section under consideration is indicative of a purpose to vest in the body named the right to grant the consent, because that body, presumably, would have knowledge of the conditions of travel and of safety or danger with respect to travel in its municipality.

The same rules of construction which require us to hold that the boulevard is a street or highway in a city, within the meaning of the first part of the section in question, logically lead us to hold that the latter part of the section vests the power to grant permission to cross such street in the body named.

The fact that the complainants have been invested by the legislature with certain rights, duties and powers with respect to the boulevard, does not, in my judgment, detract from the exercise by the city of Bayonne of other rights and duties and powers with respect to the said road, the power to do which has been vested in the city by the legislature.

The highways of the state are under the control of the legislature, and it may act in respect thereto through legislative agents created by it and vested by it with certain powers. *New Jersey Railroad and Transportation Co.* v. *Suydam, 17 N. J. Law (2 Harr.) 53 (Supreme Court, 1839).*

The legislature undoubtedly has the right to prescribe how much and what power each and any municipal subdivision created by it shall enjoy, and this rests solely in legislative discretion. *Johnson* v. *Asbury Park, 58 N. J. Law (29 Vr.) 604* (at *p. 608*) *(Supreme Court, 1896)* ; *Pancoast* v. *Troth, 34 N. J. Law (5 Vr.) 377* (at *p. 386*) *(Supreme Court, 1871)* ; *McNeal Pipe and Foundry Co.* v. *Lippincott, 57 N. J. Law (28 Vr.) 540* (at *p. 542*) *(Supreme Court, 1895).*

It is my judgment that the legislature placed in the complainants power to control the road in the particulars mentioned in the law authorizing the road and in subsequent amendments and supplements, and placed in the common council or other governing body of the city in charge of streets the power to

permit any street in the city, no matter under whose control the said street might be, to be crossed by a railroad at grade.

A construction which should hold that the boulevard was not a "street in a city" would leave it to be treated as other streets or roads not in cities are treated under the law, and it is admitted that such streets and roads may be crossed at grade without obtaining any consent to such crossing. Such a construction is not, I conclude, admissible, because it would be made in the face of the undoubted physical fact that the street is in the city.

The only other construction is that it is a street in a city, but is not within the section of the act under consideration (*i. e.,* the twenty-seventh section of the General Railroad act). *P. L. 1903 p. 659.*

I do not adopt this construction because, first, it is a street in a city, and hence clearly within the words of the section; next, because the legislature has adopted a general policy with respect to all streets in cities, as evidenced by the section, and has not excluded, either in that act or in the Boulevard act, any such streets; and lastly, because if the permission which the legislature by the section in question empowers the city authorities to give is not effectual with respect to this particular street in a city, then the legislature must be held to have omitted a case in this respect, since it is not anywhere provided that any other body may grant the permission.

I think it clearly appears that the legislature intended to provide for all cases with respect to all streets in any city, and authorized the city authorities to grant the permission with respect thereto when, in their discretion, it was safe and proper to do so.

My conclusion, therefore, is that the ordinance enacted by the city council of the city of Bayonne is effectual in law to empower the Central Railroad of New Jersey to cross the Hudson boulevard at grade at West Second street, in the city of Bayonne.

If my conclusions are sound, it results in finding the existence of three easements at the point of crossing: There is the easement enjoyed by the complainants as the custodians of the Hudson county boulevard; the easement of the city of Bayonne

with respect to West Second street at its intersection with the boulevard, and the easement of the Central Railroad of New Jersey along West Second street and across the boulevard at the *locus in quo.*

Since it is evident that the parties hereto have not agreed as to the method in which the respective easements shall be enjoyed in respect to each other, it is within the power of the court of chancery to regulate the same.

"The regulation of conflicting easements is exclusively" a chancery power (concurring opinion in *Anthony* v. *West Jersey Railroad Co., 57 N. J. Eq. (12 Dick.) 618 (Court of Errors and Appeals, 1898)*, and in a case in this court, in which all of the previous cases are noticed and commented upon, it is held by Vice-Chancellor Grey that the jurisdiction of this court, under circumstances similar to those existing in this case, is beyond challenge. *West Jersey and Seashore Railroad Co.* v. *Atlantic City and Suburban Traction Co., 65 N. J. Eq. (20 Dick.) 613 (1904).*

The court will therefore retain jurisdiction of this case and will make a decree defining the mode and manner of crossing.

The proofs show that all of that part of the city of Bayonne which lies along the Kill von Kull is extremely valuable for manufacturing purposes, and has not now any value for any other purpose.

First street lies nearest the water, and is shown to be in a very dilapidated condition, and has at certain places been vacated, and is, throughout its length at the point in question, scarcely fit for use.

Second street, the next street to First street, and the one through which the city has granted permission for the railroad to run, is not paved, and is destined to be the site of large manufactories extending down to the Kill.

The boulevard is only paved down to First street, and in view of the obvious future of the land between First and Second streets along the boulevard, it is clear that this is what might be termed "a dead end."

It appears from the proofs that the city of Bayonne is making every effort to increase its ratables and population by attracting

to the sites along the Kill large manufactories, and is offering to such railroad and other facilities necessary to their successful operation.

It seems proper to say, in passing, that the facts developed in this case constitute a striking illustration of the wisdom of the legislature in permitting the authorities of the city to judge of the advisability of grade crossings, since it appears herein that the wealth and population of the city will be augmented by making it possible for manufactories to be erected and operated at this point in the city, and the general public will be little incommoded and not at all placed in jeopardy by permitting the crossings at the point in question.

The water levels are such that an undergrade crossing of any of the streets is impracticable, and the testimony of all of the witnesses demonstrates that an overhead crossing would destroy the lands for the only purpose for which they are useful, viz., for manufacturing purposes.

An overhead crossing would block Second street entirely, so that it could not be used for teams, and would make it impossible to connect the railway with the manufacturing plants in such a way as to serve the purpose for which the railway is to be laid.

Under all the circumstances and facts, I find that the only practicable crossing is a grade crossing, and that such a crossing should be made in accordance with the most improved methods and safeguarded by the best means.

Upon my announcing to counsel for the respective parties that I had reached the conclusions just stated, there was submitted to me a form of final decree (satisfactory as to form to each of the counsel herein) providing for a grade crossing, and specifying the kind of rails, of pavement, of construction, and providing for signals, safety gates, derailing switches and the like.

I will advise a decree as herein stated.