BOARD OF COMMISSIONERS OF THE COUNTY OF MARION, ETC. *v.* BOARD OF SCHOOL COMMISSIONERS OF THE CITY OF INDIANAPOLIS

[No. 19,340. Filed April 26, 1960.]

*Alembert W. Brayton, French M. Elrod, Cecil A. Taylor, Leo Kriner,* all of Indianapolis, *Waldo C. Ging* and *Ging & Free,* of Greenfield, for appellant.

*G. R. Redding, Dan R. Winchell, Joseph T. Dye,*
*Baker & Daniels,* all of Indianapolis, and *Richard T.*
*Lineback,* of counsel, of Greenfield, for appellee.

Ax, J.—This case involves an action to recover school
transfer tuition together with a penalty and interest
from Marion County for children who were admitted to
the schools of appellee school corporation during the
school years 1952-1953 and 1953-1954 and whose fa-
thers were, during the time of the school attendance of
such children, officers or enlisted men on active duty
in the armed forces of the United States and officially
stationed and on duty at various places within the geo-
graphical boundaries of Marion County, Indiana.

Appellee's complaint was in two paragraphs, the first
claiming tuition for the school year 1952-1953 and the
second for tuition for the school year 1953-1954. Each
paragraph of the complaint charged that appellee had
for the year involved furnished tuition to the children
whose fathers were officers and enlisted men on active
duty in the armed forces of the United States and of-
ficially stationed and on duty within the geographical
boundaries of Marion County, that appellee had made
demand on appellant for payment therefor, and that
appellant had failed to make such payment. After the
overruling of appellee's plea in abatement, a decision
which is not challenged in this appeal, appellant filed
an answer pursuant to Rule 1-3 of the Indiana Supreme
Court which substantially denied all of the material al-
legations of each paragraph of the complaint. All of
the evidence was stipulated by the parties. The issue
resolved itself into a question of law whether on the
evidence as so stipulated the appellant was liable for
tuition furnished by appellee to the children whose
fathers were, during the period of the children's school

attendance, officially stationed and assigned to duty at places within the geographical boundaries of Marion County but over which jurisdiction had been ceded to the United States. A further issue of law is whether the penalty and interest adjudged against appellant were authorized by law.

The court found for the appellee and against appellant on each paragraph of complaint and that there was due the appellee from appellant for the school year 1952-1953 the sum of $26,607.02 with penalty thereon of $2660.70, or a total of $29,267.72, together with interest at 6% per annum from January 1, 1954 to the date of judgment, being $8516.89, and that there was due appellee from appellant for the school year 1953-1954 the sum of $38,663.89 with a penalty thereon of $3866.39, or a total of $42,530.28, and interest thereon at 6% per annum from January 1, 1955 to the date of judgment, being $9822.05.

Two questions are presented by this appeal: (1) Whether Burns' Ind. Stat., §28-3716 [Acts 1933, ch. 175, §1, p. 883], includes within its provisions the children whose parents are stationed either at Fort Benjamin Harrison or at the Federal Building in Indianapolis, and (2) Whether the interest and penalty provided for by §28-3718 [Acts 1935, ch. 279, §2, p. 1347] and §28-3719 [Acts 1935, ch. 279, §3, p. 1347], can be applied to situations arising under §28-3716.

The applicable statutes are herein set out in full:

§28-3716. "Children of army, navy officers, and enlisted men—Transfers—Tuition.—In all cases where any officer, or enlisted man, of the United States army, navy or marine corps is on duty in the state of Indiana, the children of any such officer, or enlisted man, who are of school age, shall be admitted to any of the public schools of any school corporation in the county in which such officer, or

enlisted man, is stationed, so long as any such officer, or enlisted man, may be on duty in such county and any such child shall be admitted to the public schools of any such school corporation so elected. Each such child so admitted to the schools of any such school corporation, whether to the schools of the corporation in which such child resides or to the schools of any other school corporation in the county, shall be considered as a transferred child, and the transfer tuition of such child shall be paid out of the general fund of the county in which such child resides, without an appropriation being made therefor, on allowance by the board of commissioners of such county, at the same charge as is prescribed by law for tuition when children are transferred from the school corporation in which they reside to another school corporation."

§28-3717. "Tuition of transferred children—Statement filed with debtor corporation—Computation of costs—Leased schoolhouses—Charge authorized.—Whenever children are transferred from one public school corporation in this state to another school corporation in this state under the provisions of any law authorizing or requiring such transfers, the corporation receiving such transfers, shall, on or before the thirty-first day of July of each year, file with the debtor corporation a verified statement showing the name of the debtor corporation, the names of all children so transferred by the debtor corporation, the respective periods of attendance of such children during the school year, the kind of school attended by each child, the annual per capita costs of maintaining the school or schools of the creditor corporation attended by such transferred child or children, and the amounts claimed as owing from the debtor corporation to the creditor corporation on account of such transfers and attendance.

The annual per capita cost shall be computed from the average daily attendance and the total expenditures of the current school year, as set out in the classified budget forms prescribed by the state board of accounts, excluding interest on bonded debt, capital outlay, debt services, and costs of transportation: and there shall be added to all

such expenditures, an amount equal to five [5] per cent on the fair valuation of the school plant: Provided, That in the cases of creditor corporations that have heretofore entered into a contract for leasing a schoolhouse or schoolhouses from voluntary associations under the provisions of the Acts of the General Assembly of the state of Indiana, Acts 1927, p. 269, since repealed, there shall be added an amount equal to five [5] per cent on the fair valuation of the school plant: Provided, That the amount so added shall not exceed fifteen dollars [$15.00] per pupil. It shall be the duty of the county assessor of each county in this state to evaluate and appraise each such school plant within his jurisdiction, annually, at any time between the first day of March and the fifteenth day of May. In making such evaluation or appraisement, such assessor shall comply in all respects with the provisions of the law of this state concerning the assessment of property for purposes of taxation and an appeal may be taken from such determination of the county assessor to the county board of review, or, in the event that no appeal be taken, the decision of the county assessor, shall be final.

And such per capita cost shall be separately computed for the (1) elementary schools, excluding kindergartens, (2) junior high schools, and (3) senior high schools of the creditor corporation.

The creditor corporation shall be entitled to charge to and receive of the debtor corporation for each transferred child the creditor corporation's per capita cost for the class of school attended by such transferred child, but if any transferred child attends a school of the creditor corporation less than the school year, the tuition charged and paid shall be proportioned to the period of attendance."

§28-3718. "Tuition—Time of payment—Penalty—Appeal to county superintendent.— (a) The debtor corporation shall pay the amount of transfer tuition shown by such verified statement out of its special school fund or its tuition fund, to the creditor corporation, on or before the first day of January next following receipt of the aforesaid statement. In the event of the failure to pay such transfer tuition within such period, a penalty of ten

██ per cent shall attach from and after such first day of January.

.(b) If a controversy shall arise between such a debtor corporation of this state and a creditor corporation of this state over the amount of such transfer tuition, the debtor corporation shall, within the time provided for payment, pay the portion thereof not in dispute, and, within such period, appeal to the county superintendent of schools of the county in which the creditor corporation is situated, whose decision shall be final. Any amount determined by the county superintendent on such appeal to be owing from the debtor corporation to the creditor corporation shall be paid by the debtor corporation to the creditor corporation within thirty [30] days after his decision is made; and if such payment be not made on or before such first day of January, the penalty, hereinbefore provided for, shall attach from and after such first day of January."

§28-3719. "Tuition—Nonpayment—County auditor—Duties of county auditor.—If such transfer tuition, or any part thereof, be not paid as and when provided in sections one and two [§§28-3717, 28-3718] of this act, then the creditor corporation shall, within thirty [30] days after the expiration of the time provided for payment, file with the auditor of the county in which the debtor corporation is situated, a certified copy of the statement provided for in section one [§28-3717] of this act, a certified copy of the decision, if any there be, of the county superintendent of schools, and a verified statement showing the balance unpaid at the time of filing and the amount of penalty accrued thereon. The auditor shall, in the next semiannual distribution of school revenues, withhold such past due tuition, and the penalty thereon, from the amount otherwise due the debtor corporation, and pay and deliver the amount so withheld to the creditor corporation. If for any reason any part of any such transfer tuition shall not be paid to a creditor corporation, in the manner hereinbefore provided, before the first day of January next after the accrual of such indebtedness, then and in such event the creditor corpora-

tion, after such date, shall have the right to bring an action against the debtor corporation and recover of it such transfer tuition, such penalty of ten [10] per cent, and interest at the rate of six [6] per cent per annum from such first day of January."

It is the contention of the appellant that property ceded to the federal government under the authority of Chapter 7 of the Acts of 1881, Burns' Ind. Stat., §62-1001, (set out below), is not within the state of Indiana for the purposes of previously quoted statutes. By agreed stipulation both Fort Harrison and the Federal Building were ceded to the Federal Government.

§*62-1001*. [13993]. Jurisdiction ceded to United States.—The jurisdiction of this state is hereby ceded to the United States of America over all such pieces or parcels of land within the limits of this state as have been or shall hereafter be selected and acquired by the United States for the purpose of erecting post-offices, customhouses or other structures exclusively owned by the general government and used for its purposes: Provided, That an accurate description and plat of such lands so acquired, verified by the oath of some officer of the general government having knowledge of the facts, shall be filed with the governor of the state: And, provided further, That this cession is upon the express condition that the state of Indiana shall so far retain concurrent jurisdiction with the United States in and over all lands acquired or hereafter acquired as aforesaid that all civil and criminal process issued by any court of competent jurisdiction or officer having authority of law to issue such process, and all orders made by such court or any judicial officer duly empowered to make such orders and necessary to be served upon any person, may be executed upon said lands, and in the buildings that may be erected thereon, in the same way and manner as if jurisdiction had not been ceded as aforesaid." [Acts 1883, ch. 7, §1, p. 8.]

Appellant cites several cases decided by the Supreme Court of the United States and one from the United

States Circuit Court of Appeals, 10th Circuit, to substantiate its contention. There is little need to discuss these cases, for they involve problems of jurisdiction on federal lands within various states and deal mostly with disputes as to which sovereign has jurisdiction of those lands. In the case at bar there is no dispute over matters of jurisdiction pertaining to the land ceded to the federal government. The legal concept of jurisdiction and the geographical structure of a state are not one and the same. The Supreme Court of the United States in *Howard* v. *Commissioners* (1953), 344 U. S. 624, 73 S. Ct. 465, 97 L. Ed. 617, aptly points out the distinction:

"The appellants first contend that the City could not annex this federal area because it had ceased to be a part of Kentucky when the United States assumed exclusive jurisdiction over it. With this we do not agree. . . . The fiction of a state within a state can have no validity to prevent the state from exercising its power over the federal area within its boundaries, so long as there is no interference with the jurisdiction asserted by the Federal Government. The sovereign rights in this dual relationship are not antagonistic. Accommodation and cooperation are their aim. It is friction, not fiction, to which we must give heed."

There are many principles of statutory interpretation stated in the opinions of our courts. The one principle which we believe should be considered before any others may be resorted to, however, is that a statute which is clear and unambiguous must be given its apparent or obvious meaning. *Cheney* v. *State, ex rel.* (1905), 165 Ind. 121, 74 N. E. 892; *Reome* v. *Edwards* (1948), 226 Ind. 229, 79 N. E. 2d 389. Where there are such statutes, the courts have no power to supply supposed defects or omissions, or to resort to construction for the purpose of limiting or

extending its operation. *Taelman* v. *Bd. of Fin. of School City of South Bend* (1937), 212 Ind. 26, 6 N. E. 2d 557. The original act of 1925, Acts 1925, ch. 82, p. 245, provided that the children of armed forces personnel should attend schools "near or adjacent" to the station of the parent. The 1933 Act repealed the 1925 Act and changed it to allow the child to attend any school in the county, thus relieving the burden placed only upon schools near the military station involved. It is conceded by appellant that the 1933 Act includes military stations within the state, or more specifically Marion County, which are not located upon federal land. Section 28-3716 speaks of the children of servicemen stationed "in" Indiana. Webster's New International Dictionary of the English Language (unabridged), 1943 Edition, defines "in" to be a word primarily "indicating a point or place thought of as spatially surrounded or bounded." There appears to be nothing in the legislative history of the Act which would indicate that the legislature intended to place a limitation such as the legal concept of jurisdiction. The 1933 Act presents no apparent ambiguities unless we indulge the complexities presented by the 1881 Act which cedes land to the federal government. The Court in *Cheney* v. *State, ex rel., supra,* explained the rule in such situations:

"The whole effort of appellant's counsel has been expended in the endeavor to create an uncertainty in the Act of 1903, not from the words of the act, but from a consideration of prior enactments. To adopt this reasoning would be a violation of the rule above stated. As laid down by the Supreme Court of the United States in *Hamilton* v. *Rathbone* (1899), 175 U. S. 414, 20 Sup. Ct. 155, 44 L. Ed. 219; 'The whole doctrine applicable to the subject may be summed up in the

single observation that prior acts may be resorted to, to solve, but not to create, an ambiguity.' "

Appellant then refers to *Wheeler and Others* v. *Burrow* (1862), 18 Ind. 14, where it was held that the child of a nonresident could not be admitted to a public school in this state. The case was decided under the statutes in effect at the time and cannot affect the status of persons who are included under the 1933 Act.

.The apparent and obvious meaning of the statute should, therefore, include all children whose parents are stationed with the armed forces geographically within the state of Indiana. We do not believe that our General Assembly in enacting this legislation intended to confer its benefits upon only those children of military personnel stationed and on duty in the county in stations or reservation not ceded to the Federal Government to the exclusion of those whose parents were stationed and on duty in posts or reservations ceded to the Federal Government. It would be an absurdity, in our opinion, to give this act such construction as would permit any such discrimination. Such an interpretation would mean, for example, that, if the father as a member of the armed forces were stationed and on duty at the Marine Corps Recruiting Station Headquarters on East New York Street in Indianapolis, Marion County, in a building not owned by or ceded to the United States, his children could go to any public school in Marion County without payment of transfer tuition, but that for fathers who, as Marine officers, are stationed and on duty at the Marine Recruiting Sub-Station in the Federal Building in Indianapolis, Marion County, such building being ceded to the United States, their children could not attend public schools in Marion County without the payment of trans-

fer tuition if such officers are not legal residents of Marion County.

If any further support be needed for the proper interpretation of the statute, it may be found in the amended title, which reads as follows:

"An Act concerning the school privileges and the charge for tuition for attending school of the children of the officers and enlisted men of the United States army, navy or marine corps who are on duty at any military, naval or marine post, reservation or station in the state." [Acts 1933, ch. 175.]

Among the places mentioned in the title is a military "reservation." It is beyond the limits of logic or reason to assert that in using the words "military, naval or marine . . . reservation" the Legislature could have intended to refer to other than a *federal* reservation. These words of the title become surplusage if federal military reservations are not deemed to be *in* the State within the meaning of the language in the body of the statute.

The foregoing approach to the proper interpretation of the statute is in full accord with standards of legislative interpretation heretofore laid down by the Indiana courts. In *State* v. *Griffin* (1948), 226 Ind. 279, 284, 79 N. E. 2d 537, 540, the court said:

". . . a statute must be reasonably and fairly interpreted so as to give it efficient operation, and to give effect if possible to the expressed intent of the legislature. It should not be wantonly narrowed, limited or emasculated and rendered ineffective, absurd or nugatory. If possible it should be allowed to perform its intended mission as shown by the existing evils intended to be remedied."

It is also established that in interpreting a statute a

court must look to all parts of the statute, including the title. *Dreves, Inc.* v. *Osolo School Twp. of Elkhart* (1940), 217 Ind. 388, 28 N. E. 2d 252. The interest and penalties here in question, under Burns' Ind. Stat., §§28-3718 and 28-3719, are part of the Acts of 1935, while the general provisions allowing for school attendance by children of parents in the armed forces of the United States under §28-3716 are part of the Acts of 1933. All of these statutes deal with tuition of transfer students. The sections of the 1935 acts appear to be in no way inconsistent with the 1933 acts, but merely add interest and a penalty for failure to pay the tuition as prescribed in the prior act. Where statutes are consistent and not repugnant to one another and cover the same subject matter, they should be construed together as if they were one statute. *The Board of Commissioners of LaGrange County* v. *Cutler* (1855), 6 Ind. 354; *Middleton et al.* v. *Greeson, Trustee et al.* (1885), 106 Ind. 18, 5 N. E. 755; *Starr* v. *City of Gary* (1934), 206 Ind. 196, 188 N. E. 775; *Fleenor* v. *State* (1928), 200 Ind. 165, 162 N. E. 234. Appellant lays considerable weight in its argument upon the fact that these statutes were enacted by different legislatures, but such a contention seems baseless if the same subject matter is covered by the subsequent acts. *Huff* v. *Fetch* (1925), 194 Ind. 570, 143 N. E. 705. The *Huff* case also holds that—

"All laws *in pari materia,* that is, all laws relating to the same subject-matter, should be construed together in determining the legislative intention, and this rule applies although the statutes were enacted at different times and by different legislatures. *State* v. *Gerhardt* (1896), 145 Ind. 439, 460, 33 L. R. A. 313."

Appellant contends that where a penalty is involved a statute allowing it should be strictly construed in re-

gards to enforcement of that penalty. The rule concerning a strict construction upon a penalty is applied where ambiguities arise and requires that the cases be brought within the strict meaning and intention of the statute. *Simmons* v. *State* (1955), 234 Ind. 489, 496, 129 N. E. 2d 121. There appears to be nothing of a conflicting or ambiguous nature occurring when the later act is read in conjunction with the earlier one. A construction is not to be put upon a penal statute which will defeat the clear intention of the legislature. *State* v. *Mears* (1937), 213 Ind. 257, 12 N. E. 2d 343.

We conclude, therefore, that the Court below properly included both penalty and interest in its judgment.

Judgment affirmed.

Myers, C. J., Cooper, J., and Ryan, J., concur.

NOTE.—Reported in 166 N. E. 2d 880.