No. 19,823.

BOARD OF COUNTY COMMISSIONERS OF ADAMS COUNTY *v.* NATIONAL TEA COMPANY D/B/A MILLER'S SUPER MARKETS, INC.
(367 P. [2d] 909)

Decided January 15, 1962.

Mr. WILLIAM PEHR, for plaintiff in error.

Messrs. QUIAT, SEEMAN, QUIAT & WOODS, Mr. GERALD M. QUIAT, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MCWILLIAMS.

THE issue to be resolved is whether the County Commissioners for Adams County acted properly in denying National Tea's application for a license to sell fermented malt beverage, this particular license being more commonly known as a 3.2 beer license. The trial court held that in denying this application the County Commissioners acted "arbitrarily, capriciously, unreasonably and without just cause" and directed the County Commissioners to grant the application and issue the license. By writ of error the County Commissioners seek reversal of this judgment and decree.

National Tea made its application for a 3.2 beer license on the form furnished and approved by the office of the Secretary of State. This application was signed by one Joseph M. Leyden, who was described as its "manager of liquor division." Opposite this signature the form carried the printed words "CORPORATE SEAL." By this application National Tea sought a license to sell packaged 3.2 beer in one of its many super markets, this particular market being located at 7041 Pecos Street in Adams County. Upon receipt of this application the County Commissioner designated and described the "neighborhood" which conceivably could be affected by either the granting or denial of this application and set the matter for public hearing.

At this hearing before the County Commissioners, National Tea presented several petitions which contained the signatures of 1457 persons who had "no objection" to the issuance of this license, were "in favor" of it and "supported" the application therefor. Of these 1457 sig-

natories 1191 resided in the "neighborhood" as designated by the County Commissioners; of the remaining 266 signatories 21 were persons who owned or managed businesses within this same area; 18 were employed in said area; and the remaining 227 though customers of this particular super market resided outside the "neighborhood." Four of these petitions were circulated by persons paid for their efforts by National Tea, and each of these four who circulated a petition appeared at this hearing and testified as to her modus operandi and the results thereof. Four other persons, two of whom were residents of the neighborhood and two of whom were customers of the market, appeared and testified in favor of the application. Also the manager of this particular super market and Leyden testified in support of the applicant. Leyden explained that it was not the policy nor desire of National Tea to seek a 3.2 beer license for each of their many super markets, but rather it was only after repeated demands for this commodity in this particular market that National Tea determined to seek this license. He testified in some detail as to the preliminary studies conducted for the purpose of determining whether there was sufficient demand to indicate a real need on the part of the neighborhood for such an outlet.

Only one person appeared at the hearing to oppose the issuance of this license, and he coincidentally was the proprietor of the only package liquor store located in this same neighborhood. There were no petitions or other remonstrances against this application, save and except a letter from one who was obviously unalterably opposed to all liquor in any form, which letter the County Commissioners on their own motion expressly disregarded.

It was also established that there was only one existing license for the sale of 3.2 beer in this neighborhood, such license having theretofore been granted to the proprietor of a bowling alley where the beverage was pre-

sumably sold not by the package but by the drink. There was no existing license in this neighborhood to sell packaged 3.2 beer.

At the conclusion of the hearing the County Commissioners took the matter under advisement. Thereafter by resolution the Commissioners denied the application, and as reason therefor advanced various and sundry grounds which may be summarized as follows:

1. The application is "inadequate" in that the corporate seal is not affixed thereto nor "is the signature of the Corporation or the signature of any officer subscribed thereto";

2. Certain petitions presented by National Tea were "not supported by affidavits as required by the law of the State of Colorado";

3. "The Board lends little weight" to certain other petitions because they were the result of the efforts of "paid circulators for the applicant";

4. All of the signatories to the various petitions merely stated that they had "no objection" to the granting of the application; and

5. That the reasonable requirements of the neighborhood are met by existing outlets.

In this Court counsel for the County Commissioners has abandoned the contention that the application was "inadequate" because of the lack of a corporate seal thereon and the alleged failure of the corporation or any of its officers to sign the application. Accordingly, we shall make no extended comment relative thereto, except to note that in our view the application is in proper form and substantially conforms to the statutory requirements in all material details. In this regard better practice would seem to suggest that should there be some defect or omission in the original application the matter should be brought to the attention of the applicant to the end that he be afforded the opportunity to correct his application or supply any omission.

Similarly, counsel for the County Commissioners does not now attempt to justify the position of the Commissioners that certain of the petitions could be disregarded because of the failure to have the signatures notarized or because the petitions were the work product of paid circulators. Accordingly, we shall refrain from comment relative thereto other than to state that this contention of the County Commissioners is completely untenable and such is not required by any statute.

Rather, it is the present position of counsel for the County Commissioners that the Commissioners considered all of the proffered evidence and that the subsequent denial of the application on the grounds that the reasonable requirements of the neighborhood for a 3.2 beer outlet were already adequately served was under the circumstances a valid exercise of a discretionary power vested in an administrative body, and hence on judicial review should not be disturbed.

■ We recognize and have repeatedly held that in acting on applications to sell liquor there is a considerable latitude and a rather broad discretionary power vested in the local licensing authority. See, for example, *Quedens v. Dillon,* 146 Colo. 161, 360 P. (2d) 984. However, their power to act is not a completely unbridled one and their action is subject to judicial review.

■ Each case to a large degree turns on the record as made by the applicant before the local licensing authority. Without indulging in extended comment, we conclude that in the instant case the County Commissioners disregarded the evidence before it and in denying the application acted arbitrarily and capriciously. The applicant, of course, has the burden of showing prima facie that the desires and reasonable requirements of the neighborhood dictate the issuance of the license. There is no other license to sell packaged beer in the neighborhood, although there is one existing license to sell 3.2 beer by the drink, which outlet apparently

serves as an adjunct to a bowling alley. Nearly 1200 residents of the affected neighborhood indicated that they not only had "no objection" to the issuance of this license, but that they were affirmatively "in favor" of it and "supported" the request therefor. This is but another way of stating that they "desire" the outlet and the existence of this "desire" is some evidence that the "reasonable requirements" of the neighborhood were not being met. Also, the testimony of the witness Leyden indicated that there was a genuine need for this outlet for packaged 3.2 beer. It is revealing to note that the only protest to this application which was before the Commission was that of the proprietor of the only package liquor store in the neighborhood. Suffice it to say that under these circumstances the County Commissioners should have granted the application, and the trial court was correct in its determination that in denying the application the Commissioners acted arbitrarily. See *Ladd v. County Commissioners*, 146 Colo. 366, 361 P. (2d) 627.

The judgment is affirmed.

MR. JUSTICE MOORE and MR. JUSTICE PRINGLE concur.