No. 21319.

JERRY L. ANDERSON *v.* HERBERT D. SPENCER, LOWELL M. ALLEN AND WARREN F. WOLAVER, AS MEMBERS OF THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF LARIMER, STATE OF COLORADO.

(426 P.2d 970)

Decided April 10, 1967. Rehearing denied May 1, 1967.

WALTER F. SCHERER, WILLIAM ALLEN, for plaintiff in error.

RALPH B. HARDEN, for defendants in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

THIS matter is before the court on rehearing, and the former opinion herein announced February 20, 1967, is withdrawn.

Jerry L. Anderson failed successively before the Board of County Commissioners in the administrative hearing and the County Court in certiorari proceedings regarding his application for a retail liquor store license. Denial of his application was based on the finding that Anderson had failed to establish the reasonable requirements of the neighborhood for such a licensed operation. Basically Anderson's grievance here arises from a claimed improper evaluation of the evidence, resulting, as he asserts, in arbitrary and capricious action by the Board.

Anderson's proposed location is south and west of Fort Collins, at one point being 1170 feet and at another 150 feet from the city's boundaries. East and north of this location is a substantial residential area, all within the city of Fort Collins. To the west spreads a sparsely populated area devoted to agricultural pursuits, and to the south, southwest and southeast there are a few residents who live within a mile of the proposed site.

Two package liquor stores on the northern and two on the eastern fringe of Fort Collins represented the only then existing outlets. Those on the northern edge could be reached from Anderson's site by travelling through Fort Collins for a distance of 4½ to 5 miles. Those on the eastern outskirts were 3½ miles from Anderson's proposed place, and apparently would require traversing in good part streets of Fort Collins to reach them.

Documents supporting and opposing the issuance of the license were filed with the Board. Those signing the "petition" for its issuance were residents and inhabitants of Fort Collins living within one mile of Anderson's site. They asked favorable consideration of the application because they *"believe* and assert the fact to be, that there is a need for a package liquor store at the above named location."

Of those opposing its issuance, some signed a statement without giving any reason for their counteraction, and some stated in writing that they felt "the needs of the neighborhood are being adequately served by present existing outlets," and these were unsworn remonstrances. Then there was a numerous opposition which stated that "it is the *belief* that the establishment of a place *selling liquor and/or beer at the above location is un*necessary and undesirable from the standpoint of safety, morality, and peaceful living of citizens of the community." The gatherers of these latter signatures executed supporting affidavits.

The persons making up these several categories of opposition resided within or beyond one mile of the Anderson property, a goodly number indeed living at varying longer distances from it, some, for instance, as far away as Loveland.

Anderson's testimony showed that his location was in a shopping center, and that the center was "zoned for business [and] commercial" enterprises. He described the area surrounding the shopping center. In his testimony he made known the existence of the four existing outlets and noted their distances from his proposed location. He testified to population data as it related to the existing outlets and his site. Anderson was not permitted to testify, however, to his belief that there was a reasonable need for the license, on the ground that this was "the very fact which the Commissioners are to determine."

Two other witnesses favored the issuance of the

license and advised the Board of the inconvenience to which they were put in getting liquor at the existing outlets.

A number of witnesses resisted the application, some testifying that a liquor store would depreciate their land; one that it would interfere with his business by reason of the litter resulting from its operation; the owner of one of the outlets, who circulated a remonstrance, that it would bring to the area an undersirable class of people having a propensity to throw empty bottles on the streets; two other owners of similar outlets, that they could take care of more business; a minister, who circulated a remonstrance among his parishioners, some of whom lived as far away as Loveland, that there was no need for another outlet and that a liquor store in the proposed location would depreciate his church property; and some that there was no need for another liquor store. Some objected on purely moral grounds.

Later the Board handed down extended findings and its resolution of the application. For the first time the Board defined the neighborhood affected, for it refused to consider signatures to petitions and remonstrances or testimony of persons who resided outside of a radius of one mile from the proposed site.

The Board minimized the evidence supporting the application by refusing to attach value to the petition favoring a license because signatures were not notarized and because the evidence represented merely an expression of beliefs and opinions of the signers.

In connection with this aspect of the Board's findings, we would reaffirm our views expressed in *Board of County Commissioners v. National Tea Company*, 149 Colo. 80, 367 P.2d 909:

"* * * The applicant, of course, has the burden of showing prima facie that the desires and reasonable requirements of the neighborhood dictate the issuance of the license. There is no other license to sell packaged beer

in the neighborhood, although there is one existing license to sell 3.2 beer by the drink, which outlet apparently serves as an adjunct to a bowling alley. Nearly 1200 residents of the affected neighborhood indicated that they not only had 'no objection' to the issuance of this license, but that they were affirmatively 'in favor' of it and 'supported' the request therefor. This is but another way of stating that they 'desire' the outlet and the existence of this 'desire' *is some evidence that the 'reasonable requirements' of the neighborhood were not being met.*" (Emphasis added.)

■ It appears, too, from this finding that the want of notarization of the "petition" devaluated, in the eyes of the Board, the signatures of those who supported Anderson's application. We treated this view in the *National Tea Company* case, *supra*, and made short work of it, saying "that this contention of the County Commissioners is completely untenable and such is not required by any statute."

Among the findings of the Board appears a review of the geographical location of persons who signed the petition supporting the issuance of the license. It was the view of the Board that the desires and requirements of persons who were within the neighborhood but resided in Fort Collins had less persuasiveness than those of persons living in the neighborhood but without the confines of the city.

■ Geographical distinctions within a neighborhood do not determine the efficacy of petitions or remonstrances in liquor licensing cases. In *Board of County Commissioners v. Bickel*, 155 Colo. 465, 395 P.2d 208, Mr. Chief Justice Moore pointedly declared:

"The findings of the Commission excluded from the 'neighborhood' all persons who reside in Fort Collins. *Brentwood Liquors, Inc. v. Schooley*, 147 Colo. 324, 363 P.2d 670, is ample authority for the proposition that boundary lines of a city do not exclude residents on one side or the other from the 'neighborhood' to be

considered in connection with applications for liquor licenses. The existence or nonexistence of outlets on either side of a city boundary are to be considered by the licensing authority in determining whether reasonable requirements of the neighborhood are being met."

██ We there held that residents of the city may not be excluded in the consideration of applications for liquor licenses, to which we now add, nor may their expressed support be diluted just because they live in the city. The efficacy of support or opposition within the neighborhood does not depend on the places of residence of the signatories.

 Consistency should not be the hobgoblin of the law. Not only should rulings be correct, but courts and boards should be consistent in their rulings. Different rules on a question should not be applied, one for the affirmative of the issue and another for the negative; such procedure is destructive of the fairness with which hearings should be conducted.

██ It appears that in some instances the Board attached significance to remonstrances even though not sworn to, to opinions and beliefs of those who signed remonstrances or testified against granting the license. and to protestants who lived in Fort Collins. Thus, that which was decried by the Board as failing to meet the requisites of evidence in support of the license took on validity and value when it appeared in the remonstrances. Such inconsistency, without considering the merits of the rulings, does not comport with the concept of what constitutes a fair hearing.

██ C.R.S. 1963, 75-2-42, directs the Board to "consider * * * the number, type, and availability of liquor outlets located in or near the neighborhood * * *" "In or near" are spatial concepts. "In" means "inside of," "within the bounds or limits of." *Board v. Central Railroad Co.*, 68 N.J.Eq. 500, 59 Atl. 303; *Board of Commissioners v. Board of School Commissioners*, 130 Ind. App. 506, 166 N.E.2d 880. "Near" denotes "close by,"

"neighboring," or "not far from." *Messenger v. The German Amer. Ins. Co.*, 47 Colo. 448, 107 Pac. 643. In noting the "nearness" of the other outlets the Board must consider also their "availability." "Availability" contemplates "suitableness for the accomplishment of a given purpose; capability of advantageous use or employment," according to The Century Dictionary and Encyclopedia. "Advantageous" means "furnishing *convenience* or opportunity to gain benefit."

The glaring inconsistencies which we have pointed out demonstrate the predisposition of the Board to deny this license and its conduct demonstrates arbitrariness and capriciousness. In the case of *Van De Vegt v. Commissioners*, 98 Colo. 161, 55 P.2d 703, this court said:

"Capricious or arbitrary exercise of discretion by an administrative board can arise only in three ways, namely:

"* * * (b) By failing to give candid and honest consideration of the evidence before it on which it is authorized to act in exercising its discretion. (c) By exercising its discretion in such manner after a consideration of the evidence before it as to clearly indicate that its action is based on conclusions from the evidence such that reasonable men fairly and honestly considering the evidence must reach contrary conclusions."

Considering all of the evidence, one fact stands out: There was no outlet similar to the one being applied for here within many miles of the proposed location. The needs of the neighborhood were not being supplied at all. In a recent case, *Commissioners v. Bickel*, 155 Colo. 465, 395 P.2d 208, this court said:

"We have many times held that where there is no liquor outlet of a given classification within a radius of several miles, the refusal to grant such a license is arbitrary and capricious where substantial support for the issuance thereof is shown. *Cloverleaf Kennel Club v. Commissioners*, 136 Colo. 441, 319 P.2d 487; *Ladd v.*

*Commissioners,* 146 Colo. 366, 361 P.2d 627; *LePore v. Larkin,* 146 Colo. 311, 361 P.2d 343; *KBT Corporation v. Walker,* 148 Colo. 274, 365 P.2d 685; *McNeill v. Cortez,* 148 Colo. 277, 365 P.2d 687; *Commissioners v. National Tea Co.,* 149 Colo. 80, 367 P.2d 909; *Commissioners v. Whale,* 154 Colo. 271, 389 P.2d 588."

The judgment is reversed with directions to the trial court to remand the cause to the Board for issuance of the license.

MR. JUSTICE McWILLIAMS and MR. JUSTICE PRINGLE dissenting.

MR. JUSTICE PRINGLE dissents.

I dissent.

While I agree generally with the views of the opinion of the Court, it is my firm conviction that the final result reached by the majority is wrong.

In my view, the judgment should be reversed with directions to the trial court to remand the matter to the Board of County Commissioners for a hearing in which the evidence should be evaluated in accordance with the views expressed in the majority opinion.

· MR. JUSTICE McWILLIAMS authorizes me to say that he joins in this dissent.