RAWN, Appellant, vs. CITY OF SUPERIOR and others, Respondents.

*March 10—April 13, 1943.*

*L. R. McPherson* of Superior, for the appellant.
*George D. Flynn,* corporation counsel, for the respondents.

ROSENBERRY, C. J.    Two questions are involved:

(1) Is the common council of a city under a duty to grant an applicant a license where it appears that he has complied with the requirements of the law and no objection has been made to his personal fitness or the place of business?

(2) Is sec. 176.05 (8), Stats., mandatory in the sense that if the common council does not act upon an application for a license prior to the 15th day of June, it may not thereafter deny the license?

The material facts as found by the court are as follows: The plaintiff filed his application for a retail Class B intoxicating liquor license and a Class B fermented malt beverage license under the provisions of the ordinances of the city of

Superior and pursuant to ch. 176, Stats., for the premises known as 2209 East Fifth street in the city of Superior, Wisconsin, the said application having been made on April 15, 1942, for the licensing year ending June 30, 1943, and Rawn had paid the city of Superior the proper license fee. At a regularly held meeting of the common council of the city of Superior on the 21st day of July, 1942, at which council meeting the licensing committee of the said city council reported as follows: (The licensing committee recommended that a license be denied plaintiff.) The report was adopted by the common council upon motion. The court found:

"However, the licensing committee and the council, voting on the recommendation of the licensing committee, refused the license because they were of the opinion that four taverns were sufficient in this territory. That in granting licenses they sought to give preference to men who had been in the tavern business previously, and that as there were four already in business in East End, they refused the plaintiff a license, rather than to give him a license and put a man out of business who had previously been in business in the East End. There was nothing against his personal character, or against the particular building in which he was to operate the tavern, other than they were of the opinion that four taverns were sufficient for the East End."

The court further found that petitioner prior to April 15, 1942, entered into a lease agreement with the owner of the building at 2209 East Fifth street, for the use thereof as a tavern for one year, commencing July 1, 1942, at the agreed rental of $75 per month; that said building has been used and licensed as a tavern each year since the repeal of prohibition and to the 1st day of July, 1942, and is in a good state of repair and sanitation and suitable for tavern purposes; that during the year ending July 1, 1942, there were five of such Class B tavern licenses in effect in the east end of Superior; that petitioner has suffered some losses on account of his

obligation for rent upon the premises in question; that the present legal limit of such Class B licenses which can be granted in Superior for the year July 1, 1943, is ninety-nine, of which ninety-six have been granted; that the petitioner has done all acts required by the city of Superior and the statutes of the state of Wisconsin to be done by him to obtain the licenses applied for.

Upon these and other undisputed facts the court denied the petition for peremptory writ of *mandamus*. It is considered that the trial court correctly disposed of this case. In *State ex rel. Higgins v. Racine* (1936), 220 Wis. 107, 264 N. W. 490, the court held that it was only in cases where the common council or governing body arbitrarily and capriciously rejects an application or refuses consideration and inquiry in respect thereto, that courts may interfere. The real contention of the plaintiff is that when he complied with the statute, and there were no objections to his personal fitness or to the place where he proposed to conduct the tavern, he was entitled to a license as a matter of right, or stated in other words, that the common council has no discretion in such a case to deny him a license. He cites a number of cases in other jurisdictions to that effect. It is considered that the decisions of this court are to the contrary.

While *Johnson v. Town Board* (1942), 239 Wis. 461, 462, 465, 1 N. W. (2d) 796, did not present the factual situation presented by the record in this case, the court was required to determine whether the town board could deny an applicant a license in the exercise of its discretion. In that case, the license was refused because the town had voted against the issuance of such licenses. The question was there stated as follows:

"The question is whether the town board had power to refuse plaintiff a license for reasons wholly unconnected with his fitness merely because it considered that no licenses should be granted in view of the community sentiment."

After discussion of the effect of a referendum the court concluded:

"It follows that the town board, upon any consideration deemed by it importantly bearing upon the question, could deny or grant licenses in the exercise of its legislative powers, and that plaintiff has no standing to demand a license."

The case of *Bjordal v. Town Board* (1939), 230 Wis. 543, 547, 284 N. W. 534, was likewise a *mandamus* action to compel a town board to issue a retail liquor license. In that case the town had by ordinance limited the number of licenses to twenty-six. Twenty-seven applications had been filed, of which the plaintiff's was one. The town board denied plaintiff's license and granted the other twenty-six licenses, including two Class B liquor licenses to one of the applicants. The latter had made application after the application of the relator was filed. It was stipulated that a license was denied, first, because of the ordinance limiting licenses to twenty-six; and, second, because twenty-six licenses had been granted at the time of the denial. The court said:

"It is next contended that the denial of a license to plaintiff constituted an arbitrary and capricious act by the town board; that plaintiff's was the nineteenth application filed; and that there were no grounds for denying his application based on his unfitness to conduct the business or the unsuitability of the location at which he proposed to operate. This contention cannot be sustained. Plaintiff had no vested right to engage in the liquor business or to have his application for license considered in the order in which it was filed. We discover no authority for the position that he acquired any priority by filing ahead of other applicants or that the order in which applications are to be considered and acted upon by the board is not a matter purely for the board's determination."

The kernel of these decisions is that the matter of granting liquor licenses under the statutes as they now stand is within

the discretion of the licensing authority. While it may not act capriciously or arbitrarily, it may grant or refuse licenses in the exercise of a sound discretion.

(2) The plaintiff further contends that the common council had no power to deny his application after June 15th, by reason of sec. 176.05 (8), Stats., the material part of which is as follows:

"All town and village boards and common councils, or the duly authorized committees of such councils, shall meet not later than May 15 of each year and be in session from day to day thereafter, so long as it may be necessary, for the purpose of acting upon such applications for license as may be presented to them on or before April 15, and all applications for license so filed shall be granted, issued or denied not later than June 15 for the ensuing license year, provided [not material here]."

If as the plaintiff claims this section deprives the council of the power to deny a license, it likewise deprives it of the power to issue the license. If it operates to deprive the council of authority to act in one case, it does in the other. We are unable to see how the plaintiff's case is helped out by the limitation contained in this section. The granting of licenses is not within the power of the court, it is within the power of the common council. For that reason the contention of plaintiff that because the application was not denied prior to June 15th, the court should now order the common council to issue a license, cannot be sustained.

*By the Court.*—The judgment appealed from is affirmed.