GARRETT E. LYONS, Appellant, v. THE DELAWARE LIQUOR COMMISSION, Appellee.

*(April* 20, 1948.)

TERRY and PEARSON, J. J., sitting.

*Stewart Lynch* (of the firm of Lynch and Herrmann) for appellant.

*James R. Morford* for appellee.

*Clement C. Wood* (of the firm of Hering, Morris, James and Hitchens) filed a brief as amicus curiae.

Court of General Sessions for New Castle County, No. 61, March Term, and No. 98, May Term, 1947.

PEARSON, J., delivering the opinion of the Court:

The Liquor Commission has refused the applicant a retail package liquor license. The applicant says that the decision should be reversed on grounds which raise a number of factual, legal and constitutional questions. The Commission appears in support of its decision. Mr. Wood who represents some or all of the protestants before the Commission, appears in this Court as amicus curiae and argues that the appeal should be dismissed.

The applicant complied with the statutory requirements

concerning the filing of an application with the Commission. Section 18 of the Liquor Control Act. Rev. Code of Del. 1935, § 6147, as amended. The Commission received a petition signed by 60 persons (50 of whom resided within a one-mile radius from the proposed premises) protesting the grant of a license, and the application was set down for hearing on December 3, 1946. At the hearing, the applicant and the protestants adduced evidence. On January 2, 1947, the Commission filed findings of fact, a decision and an order sustaining the protests and refusing the application. The findings and decision include these:

"It did not appear from the testimony adduced at said hearing that there was any substantial public demand for a licensed package store in the locality set forth in the application or that there was any public convenience to be served by the granting of said application. * * *

"That the granting of the license applied for in the locality set out in the application is not demanded by public interest or convenience."

Applicant then moved to reopen the hearing to present further testimony, and filed affidavits of one hundred fifty persons (residing within a one-mile radius) asserting that it would be of great public convenience, and that there is a demand for a liquor store at the proposed premises. On January 10, 1947, the Commission granted applicant's motion and vacated the order of January 2. Later, the Commission held a re-hearing at which numerous witnesses testified for and against the grant of a license. The Commission received letters signed by some 1146 persons (within a one-mile radius) asking that they be joined as protestants. He also received letters and telegrams in favor of one side or the other. On February 24, 1947, the Commission filed further findings of fact, a decision, reasons for decision and an order which include the following:

"Additional Findings of Fact * * *

"(f) It did not appear from the testimony adduced at said further hearings that there was any substantial public demand for a package store in the locality set forth in the application or that there was any substantial public convenience to be served by the granting of said application.

"(g) The premises for which license is applied for in this case is located in the vicinity of Conrad High school.

"(h) The public, in the locality set out in the application have available convenient places within a reasonable distance at which they may make legal purchases of liquor.

"(i) That the premises for which license is applied for is within a short distance of the entrance gate of the General Motors Assembly Plant on Boxwood Road, which plant will employ about 2,000 persons by the end of 1947, with a possible future increase to about 4,000 persons.

"Decision

"The Commission therefore finds and determines as follows:

"1. That the granting of the license applied for in the locality set out in the application is not demanded by any substantial public interest or convenience.

"2. That it is not in the public interest that a license should be granted for a location in the vicinity of Conrad High school.

"3. That there are a sufficient number of licensed premises within a distance reasonably accessible to the residents of the locality for the legal purchase of liquor.

"4. That it is not in the public interest that a license should be granted for. a location near the entrance gate of the General Motors Assembly Plant.

"Reasons for Decision

"The Decision of the Commission is based upon the evidence adduced at the hearings as recited in the Findings of Fact of January 2, 1947, and in these findings of fact. The reasons are:

"1. That the granting of a license and the locality set out in the application is not shown by the evidence to be demanded by public interest or convenience.

"2. The place for which license is applied for is in the vicinity of a school.

"3. The place for which license is applied for is near the entrance gate of the General Motors Assembly Plant.

"4. The residents of the locality whose requirements would be served by the granting of the license applied for, have a sufficient number of places, reasonably convenient and available to them, for the legal purchase of alcoholic liquors.

"Order

"Therefore it is ordered by the Commission that the protests * * * be * * * sustained, that the application * * * for a license * * * be refused, and that the license * * * shall not issue."

From this order, the applicant brought the present appeal. He introduced before this Court, over the objection of the Commission, evidence relating to questions which need not be discussed in view of our determination of other questions in the case.

The Commission's findings of fact, reasons and decision call for two comments before proceeding with applicant's argument. First, certain of them, for example, Finding (f), may be read as implying that a burden rests

on the applicant to negative the statutory grounds for refusal of a license, found in Section 22 of the Liquor Control Act. Rev. Code, § 6151. This is not the law. *Park Distributing Co. v. Delaware Liquor Commission*, 5 *Terry* 6, 54 *A. 2d* 551. The Commission must have reasonable bases for believing that a statutory ground of refusal exists in order to reject an application on that ground; and such reasonable bases must appear in the record if the rejection is to be sustained on appeal. Secondly, the findings fail to include a statement of basic facts found by the Commission. Findings (f) and (h) are high order inferences from facts, and taken alone are not enough. We think that Section 21 of the Act, 43 Laws of Del. c. 275, p. 1129, § 2, requires that the Commission set forth the basic facts which it finds and on which it predicates its conclusions. The mere quotation or paraphrasing of the statutory language gives no indication whatever of what the Commission deems relevant factual considerations. It does not supply what is necessary to be able to state "the manner in which the Commission construed the law and applied it to the facts". For example, here the basic facts should include statements of the physical aspects of the proposed premises such as the area taken by the Commission as the locality of the premises, the kinds of buildings located, and the activities carried on, in that area, the population of the area, the number and location of other available sources of liquor, and all other facts which seem to the Commission relevant considerations with respect to the question of demand, public convenience, etc. Rather than remand the case for further findings, we think it better to use this case as the occasion for calling the matter to the attention of the Commission so that in the future, proper findings may be made; and we shall ourselves examine the record to ascertain whether there is a factual basis sufficient to support the Commission's conclusions.

Applicant contends that "The Commissioner's findings of fact that there was not a substantial demand for a package store in the location and that there was not any substantial public convenience to be served by the granting of the application are not supported by substantial evidence." The record discloses that the proposed premises are a dwelling house in a group of dwelling houses. The locality is primarily residential. Within a radius of one mile, there are ten residential, suburban developments with approximately 1410 families. Within a few hundred feet of the proposed premises is a high school athletic field, and about a quarter of a mile away are the school buildings. There is but one store in the near vicinity of the premises. The character of the locality is not changed by the fact that the development in which the premises are located adjoins a tract and plant of General Motors Corporation (or subsidiary). There are five liquor stores ("on the premises" or package stores, or both) within radii between three-quarters of a mile and two miles from the proposed premises.

 It seems to us that there is sufficient evidence in the record to support the Commission's conclusion that there was no substantial demand for a package store in the locality, nor any substantial public convenience to be served by the granting of a license. In determining these questions of demand and convenience, the character of the locality is an important consideration. It is reasonable for the Commission to allow fewer sales outlets in an area which is primarily residential than in a business or shopping area of the same size. There were vigorous protests by numerous residents of the locality. Some of the protestants gave reasons for their protests which are not grounds for refusal of a license (as, for example, general disapproval of the sale of liquor). Protests for such reasons would not justify refusal to grant any license in a locality, so that the nearest sales outlet would be so distant as

to be substantially inconvenient. But here, there are five sales outlets within two miles of the premises. This remoteness does not seem such as to occasion substantial inconvenience. The word "convenience" in the statute does not import next-door accessibility. Moreover, good faith protests of a large number of near residents does have a bearing on the existing demand for a sales outlet. The protests at least indicate an absence of demand on the part of the protestants. We think that the determination of the questions of demand and convenience under the present facts was within the range of legal discretion which the Act reposes in the Commission.

Applicant contends that Sections 22 (1, 9) and the second sentence of Section 24 (2) of the Act, Rev. Code, §§ 6151 (1, 9) and 6153 (2) are "unconstitutional, for the reason that there is contained therein an unreasonable and unlawful delegation of legislative authority and arbitrary power". The first statutory provision referred to reads thus:

"6151. Sec. 22. May Refuse License:—The Commission may refuse to license any applicant if it has reasonable ground to believe:

"(1) That there are sufficient licensed premises in the locality or that the granting of a license in the locality set out in the application is not demanded by public interest or convenience. * * *"

In the Park Distributing case, *supra*, we said 54 A. 2d 557:

"The Commission does not have an arbitrary power to grant or refuse a license application, or an unrestricted discretion in deciding whether the facts of a particular case fall within the statutory conditions upon which the grant or refusal of a license depends."

The statutory conditions refer to somewhat complex sets of facts and involve many possible considerations. In different situations, a particular consideration may vary in determinative significance, depending on the other considerations present. But merely that the Commission says that the statutory conditions exist will not withstand challenge. The Commission's statement must be supported by legally relevant considerations, and it is the duty of the Commission to point these out. To constitute a legally relevant consideration, a fact or circumstance must bear a rational and reasonably direct relation to the statutory condition in question. That is, the connection between such fact or circumstance and the statutory condition must be acceptable as significant from the standpoint of a reasonable person cognizant of the question involved and of the facts before the Commission.

Applicant says that "the statutory provisions establish no standards or controls for the guidance of the Commissioner in his administration of the Act" and are thus invalid. He refers to a doctrine stated in *Hoff v. State,* 9 *W. W. Harr.* 134, 141, 142, 197 *A.* 75, 79, as follows:

"It is well settled that a Legislature, in enacting a law, complete in itself, for the regulation of particular matters, may expressly authorize an administrative body, within definite limits, to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose. * * *

"The Legislature must declare the policy of the law, and must establish some principle or rule of action which is to control in given cases. In other words the Legislature must provide an adequate yardstick for the guidance of the administrative body empowered to execute the law; for, to uphold a delegation of power there must be discovered in the terms of the Act a standard reasonably clear whereby

discretion must be governed. In the striking phrase of Justice Cardozo, in *Panama Refining Co. v. Ryan*, 293 *U.S.* 388, 440, 55 *S. Ct.* 241, 256, 79 *L. Ed.* 446, the discretion must be 'canalized within banks that keep it from overflowing.' See *State v. Retowski*, 6 *W. W. Harr.* (36 *Del.*) 330, 175 *A.* 325; *Blackstone's Appeal*, 8 *W. W. Harr.* (38 *Del.*) 230, 190 *A.* 597."

The expressions "sufficient licensed premises in the locality" and "public interest or convenience" must be interpreted with reference to the purposes of the Act and the requirements it imposes. The Act attempts to establish controls for the liquor business in its various aspects. It permits that business to be carried on by private enterprise subject to numerous conditions and regulations. One of its purposes is to allow the conduct of the business in such manner as to afford adult inhabitants of communities throughout the state the opportunity to make, with reasonable convenience, legal purchases of liquor. *Lord v. Delaware Liquor Comm.*, 2 *Terry* 154, 17 *A.* 2d 230. Another purpose is to prevent widely-recognized evils of the business. *Darling Apartment Co. v. Springer*, 25 *Del. Ch.* 420, 22 *A.* 2d 397, 137 *A.L.R.* 803. In the light of these purposes and the requirements of the Act, the conditions of Section 22(1) constitute sufficient limitations upon the discretion allowed the Commission and legally adequate criteria for his guidance. Compare: *Biz v. Liquor Control Commission*, 133 *Conn.* 556, 53 *A.* 2d 655; *New York Central S. Corp. v. United States*, 287 *U.S.* 12, 53 *S. Ct.* 45, 77 *L. Ed.* 138; *Federal Radio Com'n v. Nelson Bros. B and M. Co.*, 289 *U.S.* 266, 53 *S. Ct.* 627, 77 *L. Ed.* 1166, 89 *A.L.R.* 406.

It is unnecessary to consider applicant's attack on the other sections since the Commission's decision can stand on Section 22(1) without regard to the others.

Applicant has moved to strike from the record

sent up by the Commission all petitions, letters, telegrams and documents protesting the grant of a license, which do not contain reasons constituting a statutory ground for the refusal of a license. He also moves to strike all of those which, as reasons for protest, refer to the reasons brought out in the first hearing before the Commission, except where it appears that the signers of the protesting papers were present at that hearing, or examined the transcript of the record. This motion should be denied. We think the Commission should send to this Court all such papers (or copies of them) which were before it in connection with the case. This Court may then decide questions of probative value, or whether the papers should be considered at all. As appears earlier in this opinion, we have considered the protests apart from stated reasons which do not constitute grounds for refusal. Further, we have disregarded the attempts to incorporate by reference matters transpiring at the first hearing before the Commission. Thus, what applicant objects to in the papers has had no part in our decision of the case.

So much for the applicant's contentions. The amicus curiae argues that the Commission was without legal authority to vacate its first order denying the application; that the subsequent vacating order and the proceedings which followed before the Commission should be treated as a nullity; and that since no appeal was taken from the first order, the present appeal should be dismissed. The amicus curiae relies on the following sentence in Section 22 of the Act, 45 Laws of Del. c. 262, p. 982:

"The Commission's decision refusing an application for a license shall be final and conclusive unless within ten days after notice of refusal the applicant shall appeal to the Court of General Sessions of the County in which the license, if granted, would operate."

It is an inherent power of Courts of record to vacate their judgments or orders under proper circumstances, within a limited period after rendition. *Tweed v. Lockton,* 5 *W. W. Harr.* 474, 167 *A.* 703. There are obvious analogies between a judgment of a Court and a decision of the Liquor Commission. The need for an opportunity for correction of errors, change of mind, or obtaining more adequate factual grounds for a decision is no less present in the case of a decision of the Commission than in the case of a judgment of a Court. The mere filing of a decision confers nothing in the nature of a "vested right". We think that the Commission's power to make a decision implies a power to vacate it, where cause is shown, within a limited period. 43 *Am. Jur.* pp. 535 *et seq.* However, the power does not exist after the expiration of the ten-day period for taking an appeal. Compare: In *re Robelen,* 3 *W. W. Harr.* 314, 136 *A.* 279. Because of the purposes to be served by the power to vacate a decision, and the absence of any reason why the Commission should not be able to vacate a decision during the appeal period, the power should be exercisable at any time during that period.

The amicus curiae further argues that applicant did not show sufficient reasons for the vacation of the Commission's order and reopening of the case. We think the Commission acted well within its discretion in granting the applicant's motion in order to permit the introduction of further evidence on the difficult questions of demand and convenience.

The amicus curiae complains that the vacating order was made without notice to the protestants. Such notice would, of course, have been proper and desirable. But the exigencies of the situation—the short period for action and large number of protestants—made it impracticable. The protestants were subsequently notified of the time fixed

by the Commission for the rehearing and were given an opportunity to be heard. The vacating order was not a final adjudication of rights, and notice of the motion to vacate was not indispensable. The arguments of the amicus curiae are, we think, without merit.

■ The Commission has pointed out that the protestants were not cited upon the appeal to this Court. Since the result of our decision of the questions discussed above is what the protestants sought to obtain before the Commission, they have not been prejudiced; and the effect of failure to cite them is of no moment here.

The Commission's decision should be affirmed in each appeal.

Orders accordingly will be entered.