No. 18,056.

CLOVERLEAF KENNEL CLUB v. BOARD OF COUNTY COMMISSIONERS OF LARIMER COUNTY, ET AL.

(319 P. [2d] 487)

Decided December 9, 1957.   Rehearing denied January 13, 1958.

442

Mr. WALTER F. SCHERER, for plaintiff in error.

Mr. RALPH B. HARDEN, for defendants in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

PLAINTIFF in error was plaintiff in the trial court and will be so designated or as the Cloverleaf Club. Defendants in error, defendants below, will be referred to here-in as the Board.

Plaintiff applied to the Board for a license to dispense 3.2 beer at its dog track in Larimer County during its sixty day season. At a hearing called to consider the application, the Club's prima facie case before the Board established that: the Club, a Colorado corporation, was fully qualified under the applicable statutes to hold a license. The nearest outlet for the sale of 3.2 beer was five miles away. The immediate neighborhood consists of farm property with about two or three farm families, and the general character of the area within a radius of five miles is the same. The Club had 113,103 people in

attendance in the 1955 racing season and had requests from substantial numbers of its patrons for service of 3.2 beer. The Club has concession facilities where food, soft drinks, tobacco, etc., are sold. The Cloverleaf Club is the only race track in the state that does not have a license to dispense malt beverages, and two clubs conducting racing meets in the state have been granted licenses to sell malt, vinous and spirituous liquors (the so-called three-way license).

At the hearing the record of the proceedings kept by the county commissioners discloses that approximately 150 persons were in attendance. Of this group six were allowed to testify on instructions from one of the county commissioners that oral testimony would be limited to spokesmen "for various areas." Of the six one was from Greeley, 15 miles away; one was from Loveland, 5 miles distant; 4 were from Fort Collins, 12 miles distant from the track site. The board attached to the record of its proceedings petitions signed by 2900 residents of Fort Collins, Eaton, Greeley, Loveland, LaPorte, Bellevue, Masonville, Berthoud, Windsor, Longmont and Wellington, none of which is closer than 5 miles to the track. Wellington is approximately 12 miles north of Fort Collins, or 27 miles away. The board also took into consideration letters purporting to represent various groups in Weld and Larimer counties, and petitions from 125 persons in Boulder County, also a considerable distance from the area involved.

At the close of the hearing the board asked for a show of hands of those assembled who opposed the license, and reports in its minutes that a majority appeared to be opposed. None of the persons was identified as to residence or interest in the application.

The board denied the application by the following motion and findings:

"Mr. Watts made the motion, seconded by Mr. Fischer, to deny the application of the Cloverleaf Kennel Club for a retail fermented malt beverage license after a con-

sideration of the reasonable requirements of the neighborhood *and the desires of the inhabitants as evidenced by the many petitions and remonstrances against the granting of such a license."* (Emphasis supplied.)

In an action in the district court in the nature of certiorari to review the action of the Board of County Commissioners the District Court upheld the action of the commissioners. The Club is here on writ of error to reverse the District Court judgment affirming the denial of the license.

The Club cites as error in the hearing before the Board and consideration by the trial court of the receiving in evidence:

1. The oral testimony of seven individuals who are not inhabitants of the neighborhood of the proposed license.

2. Letters from persons purporting to represent 118 other persons opposed to the license.

3. Written petitions by persons who are not inhabitants of the neighborhood and who are, on the face of the petition, residents anywhere from 5 to 27 miles distant.

4. A call for the showing of hands from the 150 persons at the hearing, without identifying either the persons, their interest in the matter, or their residence.

The Club contends that in the absence of the so-called remonstrances received by the board it would prima facie be entitled to a license on its showing that the reasonable requirements of the neighborhood are not adequately served, or at all, within a distance of 5 miles from their proposed establishments; that the reasonable requirements of the patrons of the track are that the service of malt beverage be available to those who desire it just as it is in the other similar establishments operating in the state; that there being no residents or inhabitants so close to the Club as to be adversely affected, or affected at all, it could not produce favorable petitions from "neighbors"; that the protestants were persons who are opposed to any license to any one at any

time and did not show how they or their homes or neighborhoods would be affected by the license.

We believe the contentions of the Club are sound. It was arbitrary and capricious for the board to deny the license.

■ In denying the license the board held that the reasonable requirements of the neighborhood did not warrant the issuance of the license. This finding is not supported by the evidence. The evidence is that the *neighborhood is not supplied at all.* A complete absence of a 3.2 outlet within a radius of five miles cannot be said to serve the reasonable requirements of the neighborhood. The limited number of days the Club would be open, to-wit, sixty days in one season, and the limited hours during which the track is open for the race program, would by the very nature of the operation limit the sales to only the track patrons. Therefore, the showing by the Club that it had 113,000 patrons during the season immediately preceding its application should have been persuasive as to the requirements of those persons affected.

■ On the question of whether the patrons of the track can be considered in determining the needs of a particular location, this court determined similar evidence was proper in *Geer v. Stathopulos,* 135 Colo. 146, 309 P. (2d) 606. In that case the location of the outlet seeking a liquor license was in the immediate vicinity of the Coliseum and the Denver Stockyards, where large numbers of citizens gather and where there are thousands of workers in the stockyards and packing plants, but with a limited number of homes and only a few neighbors. There was testimony that the additional outlet was needed in order to serve patrons attending entertainment at the Coliseum as well as a large daily population of workers in the highly concentrated industrial area. Also the applicant testified that he was on a heavily traveled public highway, with a traffic count of 20,000 cars a day, and that daily between 15 and 20

persons came into, but refused to patronize, his restaurant because of their inability to obtain liquor with their meals.

In considering the above factors presented by the applicant, a prima facie case was established for the granting of the application. This court held that the determination by the authority that four outlets were adequate in such an area was arbitrary and capricious. The court further stated:

" 'Capricious or arbitrary exercise of discretion by an administrative board can arise in only three ways, namely: * * * (c) By exercising its discretion in such manner after a consideration of evidence before it as clearly to indicate that its action is based on conclusions from the evidence such that reasonable men fairly and honestly considering the evidence must reach contrary conclusions.' Van de Vegt v. Board of Commissioners, supra [98 Colo. 161, 55 P. 2d 705]; Page v. Blunt, 126 Colo. 324, 248 P. 2d 1074."

This is the first time that we have had occasion to judicially define a neighborhood. It appears to us that its common usage signifies nearness as opposed to remoteness, viz, in the immediate vicinity. It connotes a congeries of local interests arising from a problem confined to a limited area as distinguished from matter in which every citizen in the state has a common concern. As to whether the court should have considered the petitions which were obtained from a general circulation thereof in three counties, this court said in *Page v. Blunt*, 126 Colo. 324, 248 P. (2d) 1074, that letters from various organizations and individuals from a city at large (in that case Colorado Springs) had no "probative value whatever." The court further stated:

" * * * there is no showing that any [of the letters and remonstrances] was written by authority of the members of the several organizations and there is no showing that even the officers or board members * * *

were residents or inhabitants of the neighborhood, or even the city."

We believe that the same reasoning applies to the remonstrances in evidence here. Some of the letters purported to represent organizations and other large groups of people without a showing as to their authority. All of the letters and petitions on their face showed that most of the people were so far removed as to be clearly outside of the neighborhood, and many of them were not in the county at all, representing such counties as Weld and Boulder counties. The desires of the citizens of one county cannot be controlling on the board of county commissioners of another county. Each of the 63 counties of the state are separate governments. It must be noted that under the local option provisions of the liquor code cities may be "dry" in counties that are otherwise "wet," and in that connection let it be noted that this application involves the sale of 3.2 malt beverages which, by legislative determination, are treated as non-intoxicating. Thus in this case even the pros and cons of the prohibitionists against the anti-prohibitionists have no place.

To summarize we hold: That the applicant established a prima facie case entitling it to a liquor license; that the only evidence to the contrary consisted of petitions and letters which were incompetent and irrelevant and which the board should not have considered. With those letters and petitions stricken from the record as they should have been, there remains before the board only the prima facie evidence of the Club. On such evidence the board should have granted the application.

The judgment is reversed and remanded to the District Court to remand to the board of county commissioners with directions to issue the license to the group at such a time in 1958 prior to the opening of the 1958 racing season so as to enable the Club to make the neces-

sary physical arrangements for dispensing at its location.

MR. CHIEF JUSTICE MOORE and MR. JUSTICE KNAUSS dissent.