Mr. Justice Moore
delivered the opinion of the Court.
We will refer to plaintiffs in error as Ladds and to defendants in error as the commissioners and intervenors.
Ladds applied to the commissioners, as the licensing authority in Larimer county, for a hotel and restaurant liquor license for the sale of alcoholic beverages by the drink only. The intervenors were persons who opposed the issuance of the license. The commissioners conducted a hearing on the application, at the conclusion of which the application was denied. In appropriate proceedings before the district court the action of the commissioners was upheld. Ladds seek review by writ of error, and as grounds for reversal of the judgment assert:
“1. The evidence conclusively shows that there are no outlets for service by the drink available to the public nearer than Cheyenne, Laramie, Greeley, or Estes Park, and there is a definite need for this service by the inhabitants in Northern Larimer County.
“2. The inhabitants of the neighborhood in the vicinity of Ladds’ Covered Wagon all are in favor of the granting of the Ladd application and the denial of the license sought was arbitrary and capricious.”
*368 The evidence offered in support of Ladds’ application was substantially as follows: Their place of business, known as Ladds’ Covered Wagon, is operated by Lloyd B. Ladd and ‘Daisy M. Ladd on highway 14 and 287 approximately two ¡miles northwest of Fort Collins, Colorado. The building was constructed in 1948. It is a metal type building, the inside finished in knotty pine and tile. The ballroom or large dining room is 38 x 72 feet and the small dining room is 18 x 48 feet. The building also contains a kitchen, a lounge and rest room upstairs, and a five-room apartment where the Ladds live. They can serve between 350 and 375 persons inside the building. The outside parking area can accommodate approximately 400 cars. The operation of Ladds’ Covered Wagon restaurant is the only business in which they are engaged. In 1952 they started catering to private parties and now approximately 90% of their business is party business. Highway 14 and 287, upon which the establishment is located, carries very heavy traffic and often there will be as many as one hundred cars passing in ten minute periods. The visibility from the entrance way looking west is 1100 feet, and to the east 2500 feet. Of the private parties accommodated during the past three years, approximately 45% of those attending bring their own liquor which they consume on the premises.
The nearest place to Ladds where one may purchase liquor by the drink is approximately thirty-five miles away, namely, in Cheyenne and Laramie, Wyoming, Estes Park or near Greeley, Colorado. Ladd has had numerous requests for service of liquor by the drink at his place of business. These requests have been continuous throughout the time that he has operated the Covered Wagon and he estimates he has had an average of 35 to 40 people per week who request such service, and there are many local persons who desire such service but don’t formally request it because they know it cannot be obtained. Approximately one-half the people that *369 request to be served drinks remain and the rest go on their way.
It is further disclosed by the evidence that there is no liquor outlet of any kind closer than twelve miles from Ladds’ premises, and no place is authorized to sell liquor by the drink for approximately thirty-five miles from said premises.
Petitions were filed in support of the application. They are identified as Exhibits G, H, I and J. Exhibit G contains petitions solicited by Ladd and his wife, signed by people who live in the neighborhood covering the general area along the highway for approximately a mile on each side of Ladds’ place of business. To the north of Ladd is Terry Lake and to the south is farm land. All adjoining property owners and residents signed Ladds’ petition. Of all the homes solicited, only three declined to sign. These persons were against liquor in any form, and there were two or three in the neighborhood who desired to remain neutral and didn’t sign. There are forty-eight petitions bound together as Exhibit G.
Exhibit H contains thirty-eight signatures signed by Ladds’ customers at their request.
Exhibit I contains nine signatures and is a petition signed by people who came to Ladds’ place of business and asked for a petition that they could sign, knowing that he had applied for a license.
Applicants’ Exhibit J is a group of nine petitions mailed to the Board directly from the signers.
In considering the opposition to granting the application we note that one of the attorneys for the intervenors appeared before the commissioners and asserted that he represented the Fort Collins Council of Churches, several unaffiliated churches and the Fort Collins Ministerial Association. In proceedings before the district court counsel who now appear for intervenors here filed a motion to intervene in which they described their clients as “The United Community for Legal Action,” listing some twenty-five churches in Fort Collins, La *370 Porte and Bellvue as making up the organization. Thereafter counsel filed an amended petition to intervene and listed those whose interests they sought to represent as six persons, individually, and as executive directors of the United Community for Legal Action. The addresses of these persons are shown in the motion and none of them reside within a radius of two miles of Ladds’ place of business.
The intervenors called several witnesses who testified that they were opposed to the granting of the license. We summarize the testimony of each of these persons as follows:
Dr. N. L. Beebe lives in the southeastern edge of Fort Collins and has offices located approximately six blocks south of the center of Fort Collins. He was against the granting of the license because he is a taxpaying citizen of Larimer county, and further because he is a physician and surgeon who treats the ills of human beings, is a prohibitionist and against this application, as any other.
Reverend Harold H. Wright, pastor of the Congregational Unitarian Church, testified that he lives in the south portion of Fort Collins and was against the granting of the application because as a minister for many years he is concerned with the well-being of the community as a whole.
Reverend Sherman B. Moore, pastor of the First Christian Church of Fort Collins, testified that he lives at 113 East Magnolia, about five blocks south of the center of Fort Collins; that he circulated a petition and would ask people to sign when they came out of church.
Ira Stegner testified that he lives approximately one and three-quarter miles west of Ladds on the highway; is a member of the La Porte school board and feels that the granting of the license would add to traffic hazards; would tend to create more problems at the school; and that he was against the granting of a liquor license to anyone at any place at any time.
Lee McConnell testified that he lives approximately *371 three and one-half miles west of Ladds, that he is against the granting of the license because he believes it is detrimental to the community and would be a bad influence on children riding a school bus past Ladds.
Paul Bethke testified that he is a member of the La Porte community; that he is Superintendent of schools at La Porte; that he lives about two miles west of Ladds on the highway; and that he assumes that the more outlets there are the greater the liquor consumption, and the greater the consumption the less desirable the neighborhood would be in which to live.
J. F. Forney testified that he lives at 309 South Grant street in Fort Collins, which is in the southwest part of the city and about two and three-quarter miles from Ladds; that he is in the manufacturing business; that his plant is two and one-half to three miles from Ladds; that he has approximately forty-two employees who would drive by Ladds and he believes that it would increase the drinking problem in his organization; that he had testified in opposition to the granting of a license on three or four separate occasions in the past two weeks.
Reverend William J. Hage testified that he is pastor of the First Presbyterian Church in Fort Collins; that he lives six-tenths of a mile east of the Cheyenne road at the corner of Terry Lake and is against the granting of a license because it would make his counselling work more difficult and further because the granting of a license would in effect be a counter-educational program and is within the sphere of his personal concern.
B. Y. Stover testified that he lives at La Porte, has never consumed any beer or whiskey and is against liquor in all forms.
Harold Beier testified for protestants generally as to what a neighborhood is and testified that he would consider the City and County of Denver as one neighborhood.
Mrs. Laura Weissman testified that she lives across the road from Ladds and a quarter of a mile to the west. *372 (The commissioners’ map shows her location as a half mile to the west.) She is opposed to the granting of the license because it would create an extra traffic hazard and she is opposed to the granting of a license to anyone at any time any place.
Petitions against the application were presented at the hearing. They are of two kinds, the first of which bears the caption:
“We the undersigned residents in the general area and vicinity of Ladd’s Covered Wagon Restaurant on Highway 287, just North of Fort Collins, believe there is no real necessity for this license. Therefore, we respectfully request that the board of County Commissioners of Larimer County refuse this application ” (Emphasis supplied.)
Persons signing these petitions gave addresses from various parts of the county including Livermore, Wellington, Bellvue, La Porte, Fort Collins and the rural routes around Fort Collins.
The second group of petitions were signed by persons who had widely scattered residences. The signatures appeared under a caption which voiced objection to the applications “made by Ladd’s Covered Wagon, three miles East of La Porte, retail liquor by the glass; Vern’s Inc. % mile West of La Porte retail package liquor store.” Other remonstrances included the names and addresses of two other pending applications for liquor licenses of one type or another.
It is perfectly apparent from the record in the instant case that those opposing the granting of this application as a matter of principle would militantly oppose the granting of any application for a liquor license under any and all circumstances in any area of the county. While we respect their views it is at once apparent that they are not in harmony with the law on that subject as established by the General Assembly. The issue is not whether the county of Larimer shall be “dry” or “wet.” There is no such thing under the law as county *373 wide local option. The General Assembly has decreed that the business of manufacturing, distributing and selling of liquor is lawful when supervised and controlled as provided by law. This court cannot consider objections to a license rooted solely in basic abhorrence to alcoholic beverages in any form, at any place, at any time. Such arguments are more properly addressed to the legislature. The law as applied to the competent evidence placed before the commissioners in this matter is clearly that applied in Buddy and Lloyd’s Store No. 1, Inc. v. City Council, City of Aurora, et al., 139 Colo. 152, 337 P. (2d) 389, wherein we said, inter alia:
“The wide discretion which we have repeatedly held is vested in the licensing authority in granting or denying licenses is not to be construed as authority to establish a local public policy either by express resolution or by secret agreement contrary to the state statutes which have legalized the issuance of this particular type of license. Irrespective of announced policy, the plain fact is that all the citizens of Aurora are required to go outside the city limits for purchase of a lawful commodity. There could be no greater demonstration of arbitrariness.”
Another pertinent and controlling holding of this court is found in Cloverleaf Kennel Club. v. Board of County Commissioners of Larimer County, et al., 136 Colo. 441, 319 P. (2d) 487. See also Geer v. Stathopulos, 135 Colo. 146, 309 P. (2d) 606.
Under the showing made by Ladd in support of his application it conclusively appears that the reasonable requirements of the neighborhood were not being met by existing outlets. Within the area which could reasonably be described as the neighborhood pertinent to Ladds’ establishment there was no substantial protest. We must hold that the action of the commissioners in denying the application in question was arbitrary and capricious.
*374 The judgment is reversed and the cause remanded with directions to order the license to issue.