Martha Fern GLENN, Charles Taylor, Edward Barbula, and Theresa Barbula, Appellants (Petitioners below),

v.

BOARD OF COUNTY COMMISSIONERS, SHERIDAN COUNTY, Wyoming, Byron T. Collins, Chairman, Meredith D. Brown, Member, Kenneth Hawkins, Member, Appellees (Respondents below).

No. 3668.

Supreme Court of Wyoming.

April 22, 1968.

1

Bruce P. Badley, Sheridan, for Martha Fern Glenn and Charles Taylor.

Jack Wolfé, Sheridan, for Edward and Theresa Barbula.

James E. Birchby, County and Pros. Atty., Sheridan, for appellees (respondents below).

Before HARNSBERGER, C. J., and GRAY and McINTYRE, JJ.

Mr. Justice GRAY delivered the opinion of the court.

Appellant Edward Barbula was the holder of a retail liquor license issued by the board of county commissioners of Sheridan County, Wyoming, which authorized Barbula to carry on such business on premises located in a community known as Acme, Wyoming. During the time that such license was in full force and effect Barbula, in keeping with the provisions of § 12–13, W.S.1957, filed an application with the board for a change in location of his business to premises identified as the Piney Glenn Guest Ranch located in an unincorporated community generally referred to in the record as Story, Wyoming, and further requested that the license be renewed for the proposed new location. At the same time application was made by Charles Taylor, operator of the guest ranch, for transfer of the renewed license from Barbula to the applicant. The board, on the advice of the county attorney and with the acquiescence of applicants, declined to consolidate the two matters for hearing[1] and after due notice proceeded to hear Barbula's application. At the hearing protests to the granting of the application were made, and

1. With the advent of the Wyoming Administrative Procedure Act, Ch. 108, S.L. of Wyoming, 1965 (§§ 9–276.19 to 9–276.33, W.S.1957, 1967 Cum.Supp.), we find no inhibition in the law delimiting the discretion of the board to consolidate two such applications for hearing and in the future we would suggest that they be consolidated for the sake of avoiding piecemeal adjudication of such closely related matters.

the board proceeded with the taking of the evidence of the parties. Following the hearing the board denied the application; and shortly thereafter, pursuant to Rule 72.1(c), W.R.C.P., a petition for review was filed in the district court for said county by the applicants.

Although the petition advanced several grounds for relief from the order of the board, the contentions in summary were that the board's findings of fact were not supported by evidence adduced at the hearing; that the findings of fact were contrary to the law; and that the action of the board was arbitrary, capricious, or characterized by abuse of discretion. The trial court, upon a review of the record made before the board and after listening to arguments of counsel, entered an order affirming the decision of the board of county commissioners. This appeal followed.

Before discussing the contentions of the parties to this appeal, some general comment appears appropriate. What this court said in Whitesides v. Council of City of Cheyenne, 78 Wyo. 80, 319 P.2d 520, with respect to the informal procedure adopted by the city council in denying an application for transfer of the location of a licensed premise has largely been superseded by the Wyoming Administrative Procedure Act cited above. Here the parties agree, and properly so, that the proceeding was a "contested case," as that term is defined in § 9–276.19(2), and consequently such proceeding is subject to and must be reviewed in keeping with the applicable provisions of the act.

A basic purpose of the act is to assure that the controverted issues underlying such a proceeding, with the exception of those matters that may be noticed under § 9–276.26(d), will be fully developed and supported on the record by material and substantial evidence and upon which the agency, as the finder of fact, must adjudicate the matter. The objective, of course, is to avoid agency action upon an assumption of facts undisclosed by such evidence.

Without reasonable adherence to that objective the contemplated safeguards of a direct and convenient court review, even though somewhat limited, would be frustrated.

By the foregoing we are not suggesting, of course, that the licensing authorities are no longer free to exercise discretion in acting upon applications relating to liquor licensing. The point is, however, a record must now be made from which it can be ascertained whether the exercise of such discretion had a reasonable basis within the range of the evidence adduced pertaining to the material issues embraced within the standards prescribed by the licensing act. And it is fundamental that those standards —general as they are—are not to be broadened simply to accommodate the particular whims and philosophy that the parties or the various members of the licensing authority might have concerning the subject matter. That is a task for the legislature.

Another matter worthy of some preliminary comment is the difficulty encountered in ferreting out the material issues that the board was called upon to adjudicate. The proceeding was initiated by Barbula by the filing of an application on a printed form ordinarily utilized in the issuance of an original license or the renewal thereof on the same premises. Much of the information so furnished was not particularly pertinent to an application for a change in location of the licensed premises. The only other instrument filed with the board in the nature of a pleading was an instrument entitled "Petition" signed by some eighteen persons protesting the granting of Barbula's application, and such instrument was not filed until the hearing was convened. As might be expected, the instruments described leave much to be desired by way of formulating the issues to be tried and it would have been most helpful had the board previously promulgated rules of practice and procedure for contested cases as contemplated by Ch. 108, § 2(a) (1), S.L. of Wyoming, 1965 (§ 9–276.20(a) (1), W.S. 1957, 1967 Cum.Supp.).

**4**

We recognize, however, that the requirements for procedural reform in these matters are relatively new, and in any event the courts have always been quite liberal with respect to the matter of pleadings in proceedings before administrative agencies. Hagood v. Texas Pacific Coal and Oil Company, Wyo., 356 P.2d 135, 140. The important question is whether or not the parties had fair notice of the issues involved. Section 9–276.25(b) (4), W.S.1957, 1967 Cum.Supp; and see Wright v. Munro, 144 Cal.App.2d 843, 301 P.2d 997, 1000, and 1 Davis, Administrative Law Treatise, § 8.04, p. 523, and § 8.20, p. 613 (1958). We are persuaded that the record here reasonably meets that requirement, and inasmuch as neither of the parties raised such question before or at the hearing we turn to the record as made before the board.

Our examination of the whole of the record convinces that the pivotal issue which the board was called upon to adjudicate was whether or not, as the protestants claimed in their petition, the proposed location was in an area primarily residential in nature, containing many large and expensive residential homes and cabins, and the granting of the application "could detract from the residential quality of this area, and could further detract from the value of said property as a residential area." We reach this conclusion for the reason that Barbula's application established that he was the holder of a valid and outstanding retail liquor license previously issued by the board and his fitness and qualifications to continue to hold such a license were in no way challenged. He also tendered a lease for that portion of the "lodge" of the guest ranch in which the sales room was to be located, and this was augmented by undisputed testimony to the effect that the lodge and the adjoining premises consisting of some ninety acres used for the operation of the guest ranch were suitable for the purposes intended. Thus, it is our view that Barbula at that juncture of the proceeding made out a prima facie case and it was incumbent upon the protestants to come forward with evidence to sustain their claim. Lyons v. Delaware Liquor Commission, 5 Terry 304, 44 Del. 304, 58 A.2d 889, 892.

Although some evidence in that regard was produced by the protestants, we find the record to be most unsatisfactory for purposes of review. In the first instance no real effort was made reasonably to fix the outer limits of the "area" under consideration and, with one or two exceptions, to locate the homes of the protestants in relation to the location of the lodge of the guest ranch. We appreciate, of course, that counsel, the parties, and the board had familiarity with those matters, but when the case comes before the courts for review such general terms as "community," "area," "closest," "fairly close," "[joins] on the back," and "a little farther away" when unsupported by some other means of measurement are quite meaningless.

Secondly, there was very little testimony offered in support of the protestants' claims. Only two of the protestants appeared and testified at the hearing. One was the present holder of a liquor license in the Story "community," who because of the anticipated effect of the application upon his business confessedly had "an ax to grind," and the other was the former holder of the license and former owner of the business of the first witness, who retained a financial interest in the success of that business. As might be anticipated, their testimony was devoted in a large measure to the matter of undesired competition. The holder of another retail liquor license in the community did not sign the petition but it was said that she did object. The only other witness to appear in opposition to the application was the son of one of the protestants, who in general said that the "area" was primarily residential and for families, that other than Taylor's prosperity nothing would be accomplished because liquor was already available; and his objection and the objection of others to whom he had talked, including some of the protestants, was that the "area" involved was "primarily a residential area and they do not want a lot of traffic generated by a

commercial establishment in the area, another commercial establishment apart from the ones that presently exist." That, of course, overlooks the uncontroverted testimony that the so-called Story area is a recreational area heavily patronized by the general public in the summer and early fall and that the guest ranch, together with its dining room operating seven days a week, is presently, and has been for at least twenty years, operating as a commercial establishment. Consequently we have serious doubt that there was sufficient substantial evidence from which the board on this facet of the case could affirmatively conclude as a basis for denying the application, and as the statute, § 12–11, W.S. 1957, required it to conclude, "that the welfare of the people residing in the vicinity of the place for which such license is desired will be adversely and seriously affected."

■ That, however, is not our only concern. It appears that the board never passed upon the pivotal issue. If it did, it is not reflected in its findings of fact which the Administrative Procedure Act requires in order to disclose the basis for the board's denial of Barbula's application. Any fair analysis of the only findings of fact made reveals that the board denied the application on the basis that the small population of the community—not exceeding 500 persons—could not support three retail liquor outlets and the contemplated results would be (a) an undesirable increase in drinking activity, (b) reduction in income of the two existing license holders, (c) a tendency to promote the sale of liquor to minors, and (d) to "create a further liquor dispensing and alcohol drinking operation, a result not desired by part of the landowners and persons living in the Story area."

■ It seems apparent that the board in so disposing of the matter overlooked certain fundamentals in the exercise of its powers. Not only did it fail to pass upon the pivotal issue, it appears to have decided the case to a large extent upon criteria beyond the reach of the standards laid down by the statute. For example, there is no criteria whereby the granting or the denial of an application for transfer of the location of licensed premises to another area is made dependent upon the permanent population of such area. Neither do we find any indication that the statutes are designed to suppress competition among license holders, other than the lack of competition that naturally results from the limitation of the number of retail liquor licenses the licensing authorities are authorized to grant. Also, a mere aversion to the sale of intoxicating liquor on the part of a few of the landowners and people residing in the area is not a valid criteria. Cloverleaf Kennel Club v. Board of County Commissioners of County of Larimer, 136 Colo. 441, 319 P.2d 487, 489; Ladd v. Board of County Commissioners of County of Larimer, 146 Colo. 366, 361 P.2d 627, 630. That is particularly true in this jurisdiction where the State itself engages in the exclusive sale at wholesale of intoxicating liquor—other than malt beverages—within the state and enjoys substantial profit and income from such sales.

For such reasons we hold that the board reached its decision under a substantial misapprehension of applicable law. In so ruling we have not overlooked the several authorities from other jurisdictions cited to us by counsel for the appellees in support of the action taken. Almost invariably, however, the statutory standards underlying the cases cited differ from our own and are not particularly helpful or persuasive.

Under the circumstances we have no alternative but to vacate the order of the trial court with instructions to remand the case to the board for further proceedings consistent with this opinion.

The order of the trial court vacated and remanded with instructions.

Mr. Justice PARKER, not participating.

Mr. Justice McINTYRE, dissenting.

As I understand, the majority is basing its opinion in this case on the conclusion that

it was "incumbent upon the protestants to come forward with evidence to sustain their claim." This I cannot accept.

The county commissioners have a duty to perform, and it would be their duty to protect the public from an undesirable situation, even if no one came in to protest. To say otherwise would be similar to saying that rate-making bodies are compelled to grant requested rate increases, if the public does not come in and make a good record against the request.

Our Administrative Procedure Act may give the right for an interested member of the public to hire an attorney and come in and make a record which would meet all of the standards set forth in the Administrative Procedure Act and in the majority opinion of this case. However, it is quite a different thing to say particular members of the public have an absolute duty and necessity to make such a record and that the administrative agency is bound to act against the public interest if such is not done.

In this particular case it seems to me the county commissioners made an unusually fine record. If it does not meet the standards and requirements of the Administrative Procedure Act, then I cannot understand how an ordinary administrative body the size of a board of county commissioners could ever do so. As far as factual findings are concerned, the board found:

"1. That two liquor licenses hitherto have been issued to that populated and unincorporated community area in Sheridan County, Wyoming, known as Story, Wyoming * * *.

"2. That the permanent population of the aforesaid Story community area is not over five hundred (500) persons * *."

Nothing could be more factual than these two findings, and there was more than ample evidence to justify both. In fact, the two facts stand admitted and undisputed. Indeed, as to the permanent population being not over 500 persons, the undisputed testimony was that the permanent population was not over 300 persons.

From the two findings of fact mentioned, the commissioners concluded, first, "that such a small population cannot support liquor dispensing operations of three license holders." It then continued with a finding:

"3. That by reason of the above, the welfare of the people of Story, Wyoming, the vicinity of the place for which the Applicant Edward Barbula desires the liquor license, *will be adversely and seriously affected and the purpose of this act to regulate the traffic in liquor will not be carried out by the granting of the application in question and issuance of the desired license.*" (Emphasis supplied.)

For my part, I cannot go along with the idea that we should substitute our opinion for the opinion of the commissioners on the question whether the welfare of the people of Story would be adversely and seriously affected by the granting of the application for transfer. To do so makes us county commissioners rather than judges.

Section 12–11, W.S.1957, provides that a liquor license shall not be granted if the governing body shall find from evidence at the hearing that the welfare of the people residing in the vicinity of the place for which such license is desired would be adversely and seriously affected, or that the purpose of the act would not be carried out by the issuance of such license. This, of course, is exactly what the commissioners did find. In that connection, it is to be noted the statute does not spell out what will or will not adversely affect the welfare of the people. Considerations in that regard are abstract and complex and subject to great differences of opinion.

Under such a statute as ours the court held, in Ex parte Velasco, Tex.Civ.App., 225 S.W.2d 921, 923, where the legislature has seen fit to place the responsibility of granting or refusing licenses within the discretion of an individual, his decision will not be disturbed unless it is apparent that he acted arbitrarily and unreasonably. To the same effect, is Rawn v. City of Superior, 242 Wis. 632, 9 N.W.2d 87, 89.

There is no showing in this particular case that the commissioners acted capriciously or arbitrarily, and I even doubt if the majority is justified in its reference to their "particular whims and philosophy."

I think the decision in this case was clearly one for the county commissioners and not one for the courts. It is, in my opinion, unfortunate the district court is not being affirmed in its decision not to interfere with the action of the commissioners.