Opinion by
Mr. Justice Kelley.
Mildred L. Johnson (applicant) applied to the Board of County Commissioners of Boulder County (the board) for a so-called three-way restaurant liquor license for her restaurant in Niwot, Colorado. Such a license permits the holder to sell beer, wine and spirituous liquors to its customers by the drink only for consumption on- the premises. The application was denied. On certiorari the district court found that the board acted arbitrarily and capriciously in denying the license and ordered that it be granted. The board, by writ of error to this court, seeks reversal of that judgment.
. . Assignments of error by the board requiring our consideration relate to (1) the responsibility for defining “neighborhood” and the definition of “neighborhood,” and (2) the weight of the testimony to be accorded those who lived within the. unincorporated area where the license was.sought as against that of those who worked in the area, but lived outside of the immediate area. An answer to the second question depends largely on the definition of neighborhood. The ultimate question, of course, is: Did the board act arbitrarily and abuse its *262 discretion in denying the application, as the trial'court found?
I.
As we view the record, issue (1) does not actually relate to the question of responsibility for establishing boundaries of the neighborhood, but the issue is whether the board considered the proper neighborhood, under the circumstances of this case, in applying the statutory tests for granting or refusing the application.
 The statutory responsibility of the board is to determine the reasonable requirements of the neighborhood and the desires of the inhabitants. C.R.S. 1963, 75-2-9(2). The geographic extent of the neighborhood will vary from case to case, depending on’"the circumstances. Cloverleaf Kennel Club v. Board of County Commissioners, 136 Colo. 441, 319 P.2d 487. See, also, Hicks v. Capra, 160 Colo. 248, 416 P.2d 362; AWR Corporation v. Board of County Commissioners, 154 Colo. 511, 391 P.2d 675; Bailey v. Board of County Commissioners, 151 Colo. 115, 376 P.2d 519; Ladd v. Board of County Commissioners, 146 Colo. 366, 361 P.2d 627; Geer v. Stathopulos, 135 Colo. 146, 309 P.2d 606.
In the present case the board did not attempt to define “the neighborhood” prior to or during the hearing on the application. On the other hand, the applicant, both by testimony and exhibits, directed its evidence to a neighborhood represented by a circle with a six-mile radius, using Niwot as the center. The protestants assumed the Neighborhood to be county-wide, as to certain objections, and limited to Niwot as to others, as will be seen from an analysis of their objections to granting the license. Actually, the board concedes in its brief that the neighborhood is not limited to the town limits of Niwot.
Under the circumstances, we agree with the trial court that the hearing was conducted on the basis that the neighborhood was that delineated by the applicant.
*263 In its order denying the application, the board found, however,
“2. That, after considering the facts and evidence adduced as a result of the Board’s investigation and at the hearing; there is no requirement for such a license in the neighborhood of the proposed location at the present time and that the issuance of such a license is not desired by the inhabitants of the area immediately surrounding the premises for which the application is sought.” (Emphasis added.)
It thus becomes clear that the board, in determining the requirements of the neighborhood and the desires of the inhabitants limited its consideration to the area “immediately surrounding the premises for which the application is sought.” In other words, the board favorably considered the protests from those living within the platted, but unincorporated, town of Niwot, immediately surrounding the premises (and those of a few protestants who lived elsewhere), but completely disregarded the desires of those who worked in the area and lived outside of the area immediately surrounding the premises for which the license was sought.
II.
The crucial issue is whether the board acted arbitrarily and abused its discretion in so limiting its consideration to the requirements of Niwot, and to the desires of the inhabitants of Niwot. In other words, can the licensing authority, regardless of the evidence presented to it, arbitrarily delimit “the neighborhood”? It is clear from the protest petitions and the testimony of the inhabitants of Niwot and its immediate vicinity that the denial of the application for a restaurant license fulfilled their requirements and desires.
In Bailey v. Board of County Commissioners, supra, relied upon by the board to justify its denial of the application, this court affirmed the denial of a liquor license for a restaurant located in the unincorporated town of Lucerne. This case is still the law in this state *264 and, unless the facts in the present situation can be distinguished from those in Bailey, we must follow it.
Lucerne, like Niwot, was unincorporated, and was equidistant (three miles) from Greeley and Eaton. It was labeled by the court as “a predominantly rural community in Weld County.” Also, the court noted,
“The general neighborhood was not precisely defined or limited by the applicants or the board, and the petitions and remonstrances indicate that the parties considered the neighborhood as including the city of Greeley. A substantial majority of those described as ‘prospective customers’ of the proposed establishment reside in Greeley, from whence come most of the petitions pro and con. The petitions were almost evenly divided with 500 in favor of granting the license and 400 thereof opposed. Merely being in ‘favor’ does not show ‘need.’ There are thirty-two presently existing outlets in Rosedale and Garden City, incorporated municipalities contiguous .to the southern boundary of Greeley. Five or six of these are approximately a mile and one half from the center of Greeley, hence much closer thereto than the proposed license location, which is approximately four miles, to the north.”
The record here, contrary to the situation in Bailey, discloses that there was not a single three-way license within the neighborhood defined in the testimony.
The “Petition and Protest,” signed primarily by residents living within and immediately adjacent to Niwot, objected to the granting of a license because “the granting of such a license would be detrimental to the town of Niwot.” The testimony of witnesses in support of the protest manifested an attitude that alcoholic beverages are evil per se and the application therefore should be denied.
We are not called upon, nor was the board, to determine whether liquor is evil per se. That is a matter which is left to the judgment of the people, who have spoken through their representatives — the general as *265 sembly. Ladd v. Board of County Commissioners, supra. It has determined the public policy of this state contrary to the beliefs of the protesters. It has decided that the sale of liquor by the package (C.R.S. 1963, 75-2-19 and 20) and sale of liquor by the drink (C.R.S. 1963, 75-2-21, 22 and 23) should be regulated rather than prohibited. In the scheme of regulation a limited discretion in the granting or withholding of licenses has been delegated to the board of county commissioners. Its discretion in the case of each application is to determine the reasonable requirements of the neighborhood and the desires of the inhabitants on the basis of the facts and circumstances relevant to each application.
. A second basis for the protest and denial of the application was developed in the testimony of several of those who signed the “Petition and Protest.” An excerpt from the' testimony of one witness exemplifies the thesis of this second reason:
“* * * It has been a quiet, peaceful little town up to this time, every now and again people come in here and throw their beer cans in our streets, what would it be if they were able to buy it over the counter in Niwot?”
Another lady, “who was born here,” testified,
“* * * We have always been safe on our streets and yet the young people have always congregated around the Post Office. We have the two auctions, there are many peiople driving by these auctions two nights a week. Some of these people will bring their liquor with them and they have always thrown their liquor bottles around that part of town there. We are opposed to having liquor sold so that those people who do come in there in mobs to these places of business that are already established won’t make a worse mess than they do now. * * * ”
And this final word on behalf of the protestants, by a lady who lived in Niwot:
“* * * Saturday night we took three loads of young folks to Denver to the Mission and I would challenge Mrs. Johnson if she would go to the Mission and walk down *266 Larimer Street and see what liquor has done to respectable men, then I think she would change her mind. * * * ”
The second basis for protest has no relevancy to the type of license sought by Mrs. Johnson. Her customers may only purchase spirituous liquor by the drink and it must be consumed on the premises. The customers, consequently, do not receive bottles or cans to carry from the premises to be thrown in the streets.
Allied to the second basis of protest was testimony to the effect that most of the people living within the neighborhood passed a liquor store located outside the neighborhood either in going to or returning from work, and consequently the protesters argued that they could purchase their liquor requirements at those convenient sources. If the board had before it an application for a retail liquor store license that kind of evidence.might have some relevance. Here, it is not relevant and should not have been considered in weighing the requirements of-the neighborhood.
There was no competent evidence before the board, either by way of protest petitions or testimony, to negate the affirmative showing by the applicant that the requirements of the neighborhood and the desires of the inhabitants entitled the applicant to a license. And, it. is clear that the board arbitrarily restricted the neighborhood to an area which cannot be- justified under the facts of this case.
The relevant facts on this issue, as found by the trial court, are
“* * * That the applicant’s proposed location is in the center of an area of approximately sixty square miles in which there has been no license of any type granted for the sale to the public of liquor or fermented malt beverages. That this is an area of substantial residential and industrial growth and is within a short distance of the new IBM — Boulder facility. * * * ”
The trial court also found that this was the only con *267 elusion which could be fairly drawn from the evidence. We agree.
The present situation is more akin to that in Board of County Commissioners v. Bickel, 155 Colo. 465, 395 P.2d 208, than it is to Bailey: In Bickel, this court noted:
“We have held many times that where there is no liquor oútlet of a given classification within a radius of several miles, the refusal to grant such a license is arbitrary and capricious where substantial support for the issuance thereof is shown. Cloverleaf Kennel Club v. Board of County Commissioners, 136 Colo. 441, 319 P.2d 487; Ladd v. Board of County Commissioners, 146 Colo. 366, 361 P.2d 627; Le Pore v. Larkin, 146 Colo. 311, 361 P.2d 343; The KBT Corporation v. Walker, 148 Colo. 274, 365 P.2d 685; McNeill v. Cortez, 148 Colo. 277, 365 P.2d 687; Board of County Commissioners v. National Tea Co., 149 Colo. 80, 367 P.2d 909; Board of County Commissioners v. Mary Jo Whale, 154 Colo. 271, 389 P.2d 588.”
The judgment is affirmed.
Mr. Justice Day, Mr. Justice Groves and Mr. Justice Lee concur.